NATIONAL SURETY COMPANY and FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Respondents, Appellants, *v.* EDMUND K. STALLO, Appellant, Respondent.

First Department, December 30, 1915.

Guaranty and suretyship — agreement between surety and principal that competent legal evidence of discharge be furnished — termination of liability by act of sureties.

A provision in an agreement between sureties and principal for the payment of a certain premium, and a further sum annually thereafter in advance, until they shall "be furnished with [competent] written legal evidence of their discharge from liability" under the bonds, does not apply where the sureties on their own initiative procure an order terminating their further liability thereunder. Such a provision should only be given effect where the sureties continue the bonds.

Under such circumstances, no premium having been paid, the sureties are only entitled to the proportionate share of the premium payable on each bond from the date of its execution to the date of the entry of the order procured on their application releasing them from liability. This is true, although the order discharging the principal did not contain any provision releasing the sureties from liability.

CROSS-APPEALS by the plaintiffs, National Surety Company and another, and the defendant, Edmund K. Stallo, from a

judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 30th day July, 1915, upon the decision of the court after a trial before the court, a jury having been waived.

*Howard Mansfield*, for the plaintiffs.

*Charles A. Winter*, for the defendant.

Judgment affirmed, without costs, on opinion of GREENBAUM, J.

Present — INGRAHAM, P. J., LAUGHLIN, CLARKE, DOWLING and SMITH, JJ.

The following is the opinion of the court below:

GREENBAUM, J.:

On or about the 24th day of June, 1910, plaintiffs became sureties upon two several bonds duly approved by one of the surrogates of New York county, each in the penal sum of $425,000 given by the defendant for the faithful performance of his duties as guardian of Laura McDonald Stallo and Helena McDonald Stallo, infants. The defendant agreed to pay to the plaintiffs a premium of $862.50 upon each bond, and " the further sum of $575 annually thereafter in advance until the plaintiffs should be furnished with [competent] written legal evidence of their discharge from liability under said bonds." It was established upon the trial that upon the petition of the plaintiffs to the Surrogates' Court, praying to be relieved from any further liability upon said bonds, an order was duly made upon December 23, 1910, pursuant to section 812 of the Code of Civil Procedure, directing the defendant to file new bonds to the satisfaction of the court. Thereafter such proceedings were had that on or about the 24th day of February, 1911, upon the petition of the plaintiffs, a further order was made by the Surrogates' Court that the defendant as guardian deposit with the Equitable Trust Company of the city of New York all of the securities belonging to the estates of said infants, subject to the order of the defendant, to be countersigned by the surrogate, and that defendant file a new bond to the satisfaction of the surrogate in the sum of $15,000. On March 7, 1911, the secu-

First Department, December, 1915.        [Vol. 171.

rities were deposited in compliance with the order of the surrogate, pursuant to stipulation of the parties and the approval of the court, and a now bond in the sum of $15,000 was duly executed and approved by the court. On March 14, 1911, upon the plaintiffs' motion, an order was duly made by and entered in the Surrogates' Court releasing the plaintiffs from any further liability upon said bonds. On December 1, 1911, a judicial settlement of the accounts of the defendant as general guardian of Laura McDonald Stallo was had and an order was entered in the Surrogates' Court judicially settling and allowing the accounts of the defendant as guardian, decreeing that the defendant and the Equitable Trust Company deliver to Laura McDonald Stallo, the sole beneficiary, the shares of stock deposited with said trust company, and further decreeing " that upon complying with the provisions of this decree the said Edmund K. Stallo be discharged as general guardian of Laura McDonald Stallo, and relieved from all further responsibility thereunder, and from all liability to any person interested thereunder, as such general guardian as aforesaid, as to all matters embraced in this accounting." On the 13th of February, 1912, a similar order was entered in the Surrogates' Court with respect to the estate of the infant Helena McDonald Stallo, excepting that in that case the assets were to be turned over to the general guardian of the person and estate of Helena McDonald Stallo to be appointed. Neither of said orders contained any provisions in terms discharging the sureties from liability on their bonds. Upon the foregoing facts the plaintiffs seek to recover the initial premium, which it appears had not been paid by the defendant, and also the annual premiums, which under the agreements were to become payable in advance on June 24, 1911. These claims are asserted upon the ground that prior to November 10, 1911, neither of the plaintiffs was furnished with any evidence of its discharge from liability as sureties as required by the agreements between the parties. The rights of the parties must depend upon the construction to be given to the agreements executed by them when the bonds under consideration were given. As already stated, the agreements provide that the company shall be " furnished with competent written legal

evidence of its discharge from liability " under said bonds. Ordinarily these words would indicate a continuance of liability under the bonds up to such time as written legal evidence of its discharge therefrom is furnished. But in the case before us the plaintiffs, instead of continuing on the bonds until a final accounting, upon which a discharge from liability would arise, took advantage of the peculiar provisions of the section, 812 of the Code, to be relieved from continuing on the bonds. If the construction that plaintiffs put upon the agreement prevail, then the surety would have the right within a day or two after the execution of the bond to ask to be relieved from continuing liability thereunder and at the same time be entitled to payment of premiums until a formal discharge upon an accounting is had, notwithstanding its release from further liability after a certain date, with the result that the principal would be put to the expense not only of unnecessary premiums but also to the added expense involved in a compulsory accounting. We may thus conceive of a series of sureties on successive bonds exacting premiums after release from liability under section 812 of the Code, thus forcing the payment of a number of premiums and incurring expense for enforced accountings. It should also be borne in mind that the application for the bonds, which is part of the agreement with the plaintiffs, is printed and prepared by the plaintiffs, and under such circumstances every favorable intendment should be given the principal. There is no mention in the agreement of the contingency of the surety exercising its right under the statute to withdraw from the bond. In other words, the surety was privileged to avail himself of the right to be relieved from continuing on the bonds, but the principal was compelled to pay premiums until the surety's discharge and service upon it of written evidence thereof. It seems to me that such a provision as is now being discussed was only intended to apply to the case where the surety continued on the bond and not to one where it procures an order on its own initiative terminating its further liability thereunder regardless of the consent or wish of the principal. This conclusion is fortified by the further consideration that ordinarily the sureties would have a right

to assume that their liability continued under a bond until after the settlement of the accounts of the principal and hence were entitled to the payment of premiums until they were furnished with evidence of their discharge. A premium is paid the surety as compensation for assuming a liability, but where the liability no longer exists there can be no reason for thinking that the parties contemplated a continuance of its payment. Besides, no necessity would exist for furnishing evidence of a surety's discharge from further liability when he himself procured the order relieving him from further liability. There seems to be no merit in plaintiffs' contention. Plaintiffs cite *National Surety Co.* v. *Stallo* (N. Y. L. J., June 26, 1913, City Court, affd. by Appellate Term, without opinion) in support of their contention. That case is readily distinguishable from this, in that it does not appear that any order had been entered upon the plaintiffs' motion in that case releasing it from further liability as surety upon the bond which it executed. Upon such a state of facts the defendant was held liable for premiums for failure to furnish any evidence to plaintiffs of its discharge from liability. The plaintiffs also urge that defendant has made no demand in writing upon them for return of any compensation that has been paid for the unexpired portion of such suretyship, as required by the concluding sentence of section 812 of the Code. This provision implies that the surety is only entitled to premiums until the entry of the order relieving him from further liability, and was designed to compel the principal to make written demand upon the surety before he might maintain an action for recovery of the unearned part of the premium. But in the case under review no premium has ever been paid by the defendant, and hence no question of demand for return premium can arise. It is only necessary to consider to what extent the plaintiffs may recover for premiums earned. It follows from the foregoing facts that plaintiffs are entitled to the proportionate share of the premium payable on each bond for the first year from June 24, 1910, the date of its execution, up to March 14, 1911, when they were relieved from all further liability thereunder, together with interest thereon from June 24, 1910. Submit findings in accordance with the foregoing views.