# HARTFORD ACCIDENT & INDEMNITY CO. v. WHITE.
## —115 S. W. (2d), 249.

Western Section.   June 15, 1937.

Petition for Certiorari denied by Supreme Court, March 5, 1938.

(1)

Winchester & Bearman, of Memphis, for appellant.
Evans, Evans & Creson, of Memphis, for appellee.

ANDERSON, J. By a petition filed in the probate court of Shelby county under Code, section 9604 et seq., the appellant, Hartford Accident & Indemnity Company, sought to be relieved from further liability as surety on a $100,000 statutory bond furnished by William White as executor of the estate of Miss Elizabeth Hein,

deceased, and as trustee under her will. This action was taken, pursuant to the provisions of Code, section 9604 et seq. The prayer of the petition was that the said William White be required to give other security or to deliver up the estate to the petitioner or such other person as the court might direct, and that the' petitioner be discharged as surety and relieved of all liability subsequently accruing. The relief sought was resisted by the executor and trustee in an answer filed by him. Upon the hearing had upon oral evidence, the court denied the relief and dismissed the petition. From this action the surety prosecuted an appeal.

Miss Elizabeth Hein, an elderly lady, died testate, leaving a large estate. By her will, William White was appointed executor and also trustee of the residuary estate of the testatrix. It was provided that a bond of $100,000 be required of him to cover his duties both as executor and trustee. The will was admitted to probate by an order entered on May 4, 1936. The required bond was given, with, the appellant, Hartford Accident & Indemnity Company, as surety thereon, and letters testamentary were accordingly issued to' Mr. White, and he entered upon the discharge of his duties.

The petition in the present proceeding was filed on October 31, 1936. The petitioner averred therein that said William White was personally indebted to the estate of the testatrix in the sum of approximately $40,000. There was attached as an exhibit to the petition a written agreement entered into between the said William White and the testatrix on June 15, 1931, respecting the security for, and the payment of part of, the indebtedness.

The petitioner further averred that the security pledged by White with the testatrix under the terms of this agreement was of doubtful value, and that the only other assets securing the indebtedness consisted of unvalued river land north of Memphis, which was likewise of doubtful value. It was averred that in addition to the indebtedness to the estate the said executor and trustee owed substantial sums of money to others, and that he had admitted to the petitioner, prior to the filing of the petition, that he was unable to pay all or any part of the amount due the estate.

It was further averred that the written application for the bond made by the said White to the petitioner contained an agreement, under the terms of which the said White agreed that upon request he would procure the petitioner's release from liability under the bond, and that the surety should have a right at any time to be discharged from liability for the further default of the said White, and' to require him to account and give a new surety.

The will provided that the said William White should receive for his services as trustee $5,000 annually. On June 3, 1936, an order was entered in the probate court providing that the trustee should be paid this annual compensation in monthly installments·

4

commencing with the date of the death of the testatrix. After the petition was filed by the surety, three of the residuary legatees who represented the three-fifths interest in the residuary estate filed an intervening petition seeking to revoke and set aside the order entered on June 3, 1936, allowing the trustee to draw the compensation as aforesaid, and averring that the petitioners would not oppose the application of the surety to be released, provided all accrued rights be preserved and protected.

This petition averred, among other things, that in addition to the indebtedness to the estate White was "indebted to other creditors in amounts exceeding in the aggregate several hundred thousand dollars, and that he is utterly unable, financially, to pay various obligations that he owes."

An answer was filed by the appellant to this petition, in which it was averred that: "The very charge which these petitioners are thus making in the intervening petition forms one of the basic reasons motivating the Hartford Accident & Indemnity Company in filing its petition to be relieved of further liability as surety on this bond, etc." This answer was by permission of the court incorporated in, and made a part of, the original petition of the surety in the nature of an amendment thereto.

An order was entered on the petition of the residuary legatees revoking the decree entered on June 3, 1936, and terminating the authority on the part of the trustee to collect any further or additional compensation by virtue of said order.

When the matter was called for hearing, the appellant insisted that it was entitled to the relief prayed for upon the averments and admissions in the pleadings; that no proof was necessary, and it moved for a judgment accordingly.

Error is assigned upon the denial of this motion.

It is first to be noted that, apart from the statute, we think the appellant had no inherent, absolute right to be released, upon notice, from further liability upon this particular bond. It was not a continuing bond. It covered the liability of the principal both as trustee and as executor. The will fixed the term of the trusteeship at ten years. The period of liability as surety of the executor is fixed by law at the duration of the administration of the estate and until it has been closed in the manner directed by law. 11 R. C. L. 305, section 352. That no such inherent, absolute right to be released exists necessarily follows from the decisions holding that the release of a surety on bonds like that before us can be effected only by a strict compliance with the statute. Johnson v. Johnson, 6 Heisk. 240; Gower v. Shelton, 16 Lea 652; 24 C. J. 1073.

The contention of appellant proceeds upon the theory that the statute under which the proceeding was instituted makes it manda-

tory upon the court to grant the relief upon the sworn petition of the surety to the effect that it conceived itself to be in danger of suffering by virtue of its suretyship.

The statute, carried into the Code at section 9604 provides as follows: "The surety of any guardian, executor, or administrator, trustee or assignee for creditors, who conceives himself in danger of suffering by his suretyship, and desires to be relieved therefrom, may file his petition, in writing, in the county court, or the court having cognizance of the estate or fund."

Section 9605 provides: "Proceedings.—Upon such petition and notice, the court may compel the principal to give other sufficient security, or counter security, to be approved by the court, or to deliver up the estate to the petitioner, or such other person as may be directed, and *may make such other orders and decrees* for the relief of the petitioner and better security of the estate *as may be just and equitable.*" (Italics ours.)

It is the appellant's view that the word "may," in the last-mentioned section, gives the court the right either to compel the principal to give other sufficient security or to compel him to deliver up the estate to whomsoever the court should direct, but that the court "must" do one or the other upon the filing of a proper petition and notice, and that it has no discretion to decline to do either, whatever the facts may be.

Counsel for the respective parties cite cases from other jurisdictions pro and con upon the proposition that statutes in the respective states granting a surety the right to be relieved of further liability are mandatory.

We have not had access to the various statutes, nor to all of the cases cited as construing them. Whatever may be the view adopted in these cases, a disposition of the question is to be controlled by the legislative intent as disclosed by the language of our own statutes. With respect to the meaning to be given the word "may" as used in Code, section 9605, it is to be presumed that the Legislature employed the word in ordinary signification, which it "to have permission; to be allowed." It is not to be construed to mean "shall," unless it is necessary so to do in order to carry out the manifest intention of the Legislature disclosed by the language of the statute, considered as a whole. Black v. State, 154 Tenn., 88, 290 S. W., 20. We find no such necessity in the present instance. Upon the other hand, the provisions of the other Code sections dealing with the procedure by which the surety may be relieved negative the idea that the word "may" was inadvisedly used.

Code, section 9611, referring to the application for relief under sections 9604 and 9605, provides that the officer authorized to hear and dispose of the application may administer oaths and

summon witnesses. By the next section it is provided that the costs of the application, if unsuccessful, shall be paid by the applicant; if successful, by the principal.

These sections, we think, clearly manifest a legislative intent that the relief sought by the petitioner should be the subject of judicial inquiry to be granted or not in the discretion of the court; and that the court is authorized to hear proof of such facts as may be deemed to be pertinent for its guidance in the exercise of its discretion.

This for the reason among others, that section 9612 manifestly contemplates that for sufficient reasons appearing the court may deny the relief; for the application could not be "unsuccessful" if the granting of the relief provided by section 9605 was mandatory upon the filing of the petition and the giving of notice as provided by section 9604.

The authority granted with respect to the taxation of costs dependent upon the result of the proceeding necessarily presupposes the possibility of more than one conclusion in the proceeding.

The question here decided was not before the court in Johnson v. Johnson, 6 Heisk. 240, 53 Tenn., 240, relied upon by the appellant as necessitating a different view. It is true that the author of the opinion in that case, in referring to the statute, states arguendo that upon the notice of the filing of the prescribed petition the "County Court *will* compel the principal to give other security," but in the very next sentence it is stated that "a surety *may* be released upon petition and notice." We are unable to conclude from this language alone that the court meant to give to the statute the construction contended for; because, as stated, that question was not involved in that case.

As indicating the meaning intended by the use in the statute before us of the word "may," it is not without significance that in granting to sureties on official bonds the right to be released the word "shall" was employed in the provision to the effect that, upon notice to the officer by the surety of his desire to be released, "new bonds shall be given," and upon a failure so to do "the office shall be declared vacant" by an order of the court to that effect. Code, section 1848 et seq.

No offer having been made to return any portion of the annual premium, if appellant's position to the effect that the probate judge had no discretion in the matter, that its right to be relieved of further liability was absolute upon the filing of the petition and notice, should be sustained, then it necessarily follows that it would have had the same right on the next day after the bond was executed and accepted or at any time thereafter; and at the same time the right to retain the premium which had been paid it for having undertaken the risk for a year. The result would be that the

principal would be put to the expense of furnishing an additional bond, and also that involved in the accounting which would be required. We may thus conceive a series of sureties on successive bonds exacting premiums for the assumption of a risk for a specified period and being relieved of liability under the statute prior to the expiration of that time, and in this manner burdening the principal or the estate, or both, with the payment of a number of premiums and the expense of a series of compulsory accountings. Cf. National Surety Co. v. Stallo, 171 App. Div., 206, 156 N. Y. S. 988, affirmed, 226 N. Y., 707, 123 N. E. 880.

We do not think any such result was intended by the Legislature or in contemplation of the parties at the time the contract was entered into.

The question next arises as to what effect is to be given the agreement in the application for the bond which it is insisted gave appellant the right to cancel it at any time it saw fit.

This provision is contained in what is designated as an "Indemnity Agreement" appearing at the end of the application, and was acknowledged before a notary public by White alone.

. The application, as well as the agreement, is on a printed form manifestly prepared and furnished by the appellant.

It is first recited that: "If the Hartford Accident and Indemnity Company (hereinafter called the Surety) shall execute or procure the execution of the bond hereinbefore applied for, which bond and application are hereby referred to and made part of this agreement, the undersigned, in consideration thereof, covenants and agrees with the Surety as follows: I. That the statements contained in the foreging application are true. II. That the undersigned will pay to the Surety $460.00 premium upon execution of the bond, and $460.00 on the 4th day of May in each year thereafter and until the undersigned shall serve upon the Surety at its Home Office, competent written legal evidence of its final discharge from such bond, and all liability by reason thereof."

The next three provisions are immaterial.

The sixth provision is that relied upon by appellant, and is as follows:

His obligation was to pay the premium annually until the surety was legally discharged from *all* liability it had assumed or incurred. It was not confined to an agreement to pay annually until the surety was relieved of further liability; that is, from liability after the date of a release.

As stated, there was no offer on the part of the appellant to return any part of the $460 annual premium it received, and it may, we think, well be doubted whether, in the absence of such an offer, we would be warranted, under the facts of this case, in holding that

the probate judge abused his discretion in declining to grant the relief sought. 32 C. J. 1252, sections 440, 441.

The contract to pay the premium was not one such as was involved in Crouch v. Southern Surety Co., 131 Tenn., 260, 174 S. W., 1116, Ann. Cas. 1916C, 1220, L. R. A. 1915D, 966. There a gross premium was paid for the entire risk, and hence, not being subject to apportionment, it was held that where the liability on the bond had been terminated by the death of the principal prior to the expiration of the period covered (not by the affirmative act of the surety) there could be no recovery of a pro rata proportion of the premium paid. See note, Ann. Cas. 1916C, 1222.

In the pending case, by their agreement for the payment of annual premiums identical in amount, the parties have clearly indicated an intention that the premium was apportionable on the basis of the duration of the risk; and we perceive no reason why such intention should not be given effect were it necessary, especially since it was prepared by the appellant and hence to be strictly construed against it. 6 R. C. L. 858, section 246; 14 R. C. L. 938, section 114; Cf. Barnes v. Black Diamond Coal Co., 101 Tenn., 354, 47 S. W., 498; Southern Const. Co. v. Southern Surety Co., 10 Tenn. App., 506.

With respect to the right of an insurer to cancel an insurance contract, it is said that "ordinarily, apart from any provision to that effect, the return or tender to the insured of the unearned premium is a condition precedent to the cancellation of the policy unless the policy provides otherwise or unless such return or tender is waived." 32 C. J. 1252, sections 440, 441.

Moreover, since it was manifestly prepared by a compensated surety, the alleged contract right to cancel the bond at its pleasure is to be construed strictly against it. Every favorable intendment is to be given the principal. 32 C. J. 1245, section 431.

It would be indeed difficult to conclude that the parties intended that the appellant might, short of the expiration of the period for which the premium was paid, cancel the bond as provided by the statute on a known ground existing at the time it was written or on no ground at all, and at the same time retain the premium paid it, thus burdening the appellee with the expense of procuring another bond covering a part of the same period for which he had paid the appellant or forcing him to resign the trust and forego the compensation he would otherwise receive for the discharge of his duties.

However, it is unnecessary to rest the decision upon this phase of the controversy on the ground that the agreement reserving the right to cancel was unenforceable because there was no offer to return the unearned premium.

■ The parties are deemed to have contracted with reference to the law as it stood at the time. The applicable law became a part of the bond. 9 C. J. 34. Under the law as applied to bonds such as that before us, a surety can be released from further liability at the hands of the court only by strictly complying with the statute which we have held made the granting of the relief discretionary.

■ It is the appellant's contention that the appellee is estopped by this agreement to resist its effort to be relieved from further liability on the bond. The real question, however, is whether this agreement was conclusively controlling in the exercise of the discretion conferred upon the probate judge by statute and left him no alternative but to grant the relief sought. It is first to be noted that this contract, while in the application, is not in the bond. The appellant and appellee were not the only parties to the latter contract. The beneficiaries of the estate are likewise parties in a very real sense of the word. The private agreement between the appellant and the appellee was not binding upon them.

This is said to be true with respect to bonds of public officers, and we think it is likewise true with respect to bonds like the one before us. 46 C. J., section 394.

It is true that three of such beneficiaries have indicated that they do not oppose the release sought by the appellant, but others having a very substantial interest in the estate have not so indicated and were not parties to this proceeding.

■ It appears with reasonable certainty that the effort of the appellant to be relieved of liability on the bond has made it practically impossible for the appellee to obtain another surety. If the appellant is relieved, the net result would be that the appellant and the three beneficiaries who are apparently acting in concert with it would have by indirection forced the removal as executor and trustee of the one whom the testatrix very clearly desired to execute the trust which she created; and this without any substantial basis therefor.

We apprehend that the welfare of the estate and the proper execution of the trust was one matter of primary consideration by the probate judge in reaching the conclusion he did. In view of the very efficient and businesslike manner in which the affairs of the estate are being handled and the appellee's training and experience in such matters, as is hereinafter pointed out, we think the probate judge might reasonably have concluded that it was to the best interest of the estate that he whom the testatrix had selected be permitted to continue in charge of the trust; and, since granting the relief sought would have made this impossible, have predicated his conclusion, in part at least, upon this ground.

In any event he necessarily concluded that it was to the best interest of the estate that the appellant's petition be not granted. If this conclusion was warranted by the evidence it cannot be said that the private agreement between the appellant and the appellee necessitated a different conclusion.

In the case of Fidelity & Deposit Co. v. Pence, Tex. Civ. App., 272 S. W., 234, relied upon by the appellant as authority for the contention that the agreement should be given effect, the rights of the principal and the surety only were involved and not those of the obligee in the bond or the beneficiaries thereof. Hence that case is not in point.

We have not had access to the case of Gass v. Stinson, Fed. Cas. No. 5260, also relied upon by the appellant, but it appears from the quotation from that case appearing in the brief, that "all the parties understood, that the liability of Gass as surety was terminated by a notice, sufficient for that purpose." The other authorities relied upon, so far as we have been able to examine them, appear to deal with the obligations where the right of the sureties to be relieved was expressly reserved in the obligation itself, and all of the parties interested were hence affected with notice thereof and bound thereby. As above pointed out, this is not true with the bond here involved.

It remains to be determined whether the evidence warrants the conclusion that the decree of the probate judge amounted to an abuse of the discretion conferred upon him by the statute.

The appellant contends that it should have been released because it was shown that ample grounds existed for its belief that it was in danger of loss by reason of its suretyship; that these grounds consisted of the facts that its principal was hopelessly insolvent; that he "owes the estate something in excess of $30,000.00;" that, if this amount be not collected through failure of the executor to exercise due diligence, appellant would be liable for the loss sustained; and that appellee has paid himself compensation at the rate fixed by the will and the order of the court instead of applying the amount upon his indebtedness to the estate.

The appellee White was for many years prominently identified with the banking and real estate business in Memphis. For many years prior to her death he was the intimate and highly regarded friend, as well as business adviser, of the testatrix. He handled all of her business affairs, which were manifestly extensive, and this was done in an apparently successful and entirely satisfactory manner.

In recent years the appellee suffered financial reverses and became financially involved to the extent that he was unable to meet his obligations. This situation was fully known to the testatrix when she nominated him her executor and trustee.

In fact, she released him of a large part of what he owed her, and made him the recipient of her bounty in other respects.

While her attitude is, of course, not necessarily controlling, there is no doubt whatever that the testatrix fully intended and desired the appellee to execute the trust imposed upon him by her will and to receive the compensation incident thereto; nor is there any doubt whatever that she had unlimited confidence in the appellee, and, so far as this record discloses, that confidence was fully justified.

Although it does not clearly appear from the evidence it is asserted in the brief, and not controverted, that the testatrix' estate consisted of approximately $1,000,000 in personal property and approximately $1,500,000 in income-producing real estate; that the personal property consists of stocks, bonds, and money.

It is shown to have been generally known among representatives of various surety companies that the testatrix left a large estate requiring of her executor a large bond. D. A. Fisher, Inc., general agents of the appellant, were among those who sought the opportunity of writing the bond. Mr. Will Johnson was vice president and general manager of the agency and the representative who procured the appellee's application for the bond. At the time he did so he was fully advised of the amount and status of the appellee's indebtedness to the estate as well as the manner in which it was secured; and the only reasonable inference from the evidence is that Mr. Johnson was also fully advised as to the appellee's financial condition in other respects. As the appellant's representative he made an investigation of the value of the collateral securing the indebtedness to the estate and testified in this case that he considered it ample. All of the information obtained by Mr. Johnson was transmitted to the executive offices of the appellant at its home office, and the bond was accordingly written on or about May 4, 1936, with full knowledge of all of the facts alleged to afford the basis for the relief now sought by the appellant.

In August, 1936, the appellant expressed some dissatisfaction over its liability, and appellee, accompanied by Mr. Allen Fisher, president of D. A. Fisher, Inc., appellant's general agents, immediately went to the appellant's home office at Hartford, Conn., and there spent two or three days in conference with the officials of the company. The latter were advised fully and in detail with reference to the entire situation, including the manner in which the estate was being handled; the status of the appellee's indebtedness to the estate; and his financial condition. They were told of the circumstances under which he had drawn about $2,500 of his annual compensation of $5,000 fixed by the will for his services as trustee, and of his agreement that no more would be drawn until his debt was liquidated. They inquired as to why the appellee had withdrawn the amount referred to, and were told that it was because

he thought his debt amply secured, and it had not occurred to him that his action in so doing would be questioned.

It is clear that the officials then concurred in this view with respect to the sufficiency of the security as they had done in the first instance. They expressed satisfaction with the situation and a willingness to "go on with the bond."

Nothing further was heard about the matter until October, 1936, when, without any change in the situation whatever so far as is disclosed, the petition in this cause was filed.

The estate is being administered under joint control of the executor and the appellant. The stocks and bonds are kept in a safety deposit box which can be opened only by the joint use of two keys, one of which is in the possession of the appellant's representatives in Memphis and the other in that of appellee. The money is on deposit in a bank, and can be withdrawn only on checks signed by both.

Conceding the indebtedness of the appellee to the estate to be approximately $40,000, there is no reasonable basis in the evidence for believing that the security therefor is insufficient or that the appellant at any time believed it to be so.

The debt is secured by the capital stock of the Franklin Land Company which owns 480 acres of land lying immediately across the Wolfe river and partly within the city of Memphis. The compensation of the appellee as trustee, as fixed by the will, as well as that which it is reasonable to expect will be allowed him for his services as executor, is, of course, subject to be applied on the indebtedness.

In addition to the testimony of the appellant's representative, Mr. Johnson, with respect to the value of the security, three real estate men, shown to be fully conversant with the value of land such as that owned by the Franklin Land Company, were examined, and their testimony fully supports the conclusion reached by Mr. Johnson, as testified to by him, that the indebtedness to the estate was amply secured.

We do not think the appellant is in any position to urge as a basis for relief that appellee failed to apply on his indebtedness that portion of his compensation as trustee which he drew. It knew about that at the time. Its representatives necessarily had to sign the checks upon which the amount was paid to appellee. It made no objection then, and we do not think it can do so now. Had it put forth at that time the insistence now made, there is no doubt but that appellee would have readily agreed that his compensation be applied on the debt due the estate as he subsequently did do and as perhaps the law required in any event. That requirement was waived by the acquiescence of appellant in so far as its rights in the premises were concerned, and it seems clear to us

that good faith forbids that it now be heard to complain to the prejudice of the appellee of that to which it consented.

Moreover, since, under the testimony of its own representatives, the debt was otherwise amply secured, the fact that appellee withdrew a portion of his compensation did not increase the hazard of appellant's suretyship.

There was, of course, some hazard involved in entering into the contract of suretyship as is true with all such contracts; but this the appellant was well paid to incur and affords no basis for complaint now.

In addition to the facts before stated, the record discloses that this estate is being handled in a highly efficient and businesslike manner. Its affairs are periodically checked by a certified public accountant who set up the accounting system which the appellee has faithfully followed. Copies of all reports are furnished the appellant, and it is kept constantly and fully advised in detail of the manner in which appellee is discharging his duties and the status of his accounts. Its joint control of the assets is complete.

Appellee is shown to be thoroughly equipped by training and experience to discharge the trust. There is nothing whatever in the record to reflect upon his personal integrity. His inability to meet his obligations cannot be considered as necessitating a contrary view. This appellant necessarily conceded in writing the bond with a full knowledge of the facts.

We conclude, therefore, upon this phase of the case, that the effort to be relieved from the obligation of the bond was altogether arbitrary in the sense that it was without any factual basis upon which appellant was in a position to rely; that there was no reasonable ground for the alleged belief of appellant that it is "in danger of suffering by his (its) suretyship." Certainly, it is in no more danger than it was at the time it wrote the bond and pocketed that portion of the premium paid it. Cf. Johnson Transfer & Freight Lines v. Insurance Co., 168 Tenn., 514, 521, 79 S. W. (2d), 587, 97 A. L. R. 277.

To the contrary of the view advanced, Mr. Johnson, vice president and general manager of appellant's general agent, who is shown to have been fully informed with respect to the affairs of the estate, testified that during twenty years' experience as a representative of sureties in the supervision of the execution of trusts, the one here involved had "been handled as well as any we have ever had."

The result is that in no view of the case do we feel warranted in distrubing the decree entered by the probate judge. It is accordingly affirmed, at the cost of the appellant.

Senter and Ketchum, JJ., concur.