Williams, J.
 

 Did the trial court commit prejudicial error in sustaining the general demurrer as to each of the two defenses set out in the amended answer of the defendant, American Fidelity & Casualty Company, Inc.? The demurrer raises one question common to both defenses, namely, whether the liability insurance-policy covered the operation of the bus of Great Eas
 
 *139
 
 tern Stages, Inc., in taking it from Columbus to Cleveland to be repaired. If this question is answered in the affirmative, it will be unnecessary to consider the two defenses separately.
 

 Though the answer is lengthy the essential facts pleaded therein may be stated with brevity.
 

 On January 7,1934, Great Eastern Stages, Inc., was operating one of its busses over U. S. route No. 40 and by virtue of a certificate issued by the Public Utilities Commission of Ohio. The bus became partially disabled and another was substituted for it. Thereupon the transportation company placed the disabled bus in charge of one of its mechanics, La Mar D. Quick, who started to drive it from the city of Columbus over U. S. route No. 23 bound for the company’s garage in the city of Cleveland where the bus was to be repaired. At a point on such route- about one-half mile south of the city of Delaware, Ohio, the bus stopped because of motor failure due to a broken timing chain and an automobile in which plaintiff’s decedent was riding collided with the rear end of the bus, resulting in the fatal injury of the decedent. At that time the bus was not being operated for the carriage of passengers and was not going over a route upon which it had been authorized to transport persons or property for hire by the Public Utilities Commission, the route being merely a direct and convenient one by which to reach the garage.
 

 The liability insurance policy in force at that time was executed and delivered pursuant to Section 614-99, General Code (114 Ohio Laws, 216) which so far as applicable reads thus:
 

 “No certificate of. convenience and necessity shall be issued by the commission to any motor transportation company until such motor transportation company shall have filed with the commission a liability insurance policy or bond satisfactory to the commis
 
 *140
 
 sion in snch sum and with such other terms and provisions as the commission may deem necessary adequately to protect the interests of the public having-due regard for the number of persons and amount of property affected, which policy * * * shall insure the the motor transportation company against loss sustained by reason of the death of or injuries to persons * * * resulting from the negligence of such motor transportation company * * #. If such policy or bond is cancelled during the term thereof or in event the same should lapse for any reason, the commission shall require such motor transportation company to replace such policy or bond with another fully complying with the requirements of this section, and in default thereof the certificate shall be deemed revoked. ’ ’
 

 The policy of insurance indemnified Great Eastern Stages, Inc., to the amount of $6,000 against loss by injury to or death of one person resulting from the negligence of Great Eastern Stages, Inc., while operating, as a common carrier, the motor vehicle or vehicles enumerated in the schedule of statements of the policy, or any substituted or emergency vehicle, under and in accordance with a certificate of public convenience and necessity issued by the Public Utilities Commission of Ohio.
 

 In accordance with the order of the Public Utilities Commission of Ohio and its requirement with respect to all policies of insurance filed with it, there was attached to the policy involved herein an “Endorsement Covering- Persons and Property Except Cargo,” the terms and provisions of which, as alleged in the answer, “were limited, and intended by said commission to be limited, to the total sum of six thousand dollars ($6,000) for * * * death of any one person caused by any one vehicle, regardless of the number of policies filed with the said commission covering-
 
 *141
 
 operations tinder any one certificate issued by said commission. ’ ’
 

 It is not necessary to set out further allegations of the amended answer. It appears therefrom that the policy was duly executed and delivered and approved by the commission and no question has been raised in this connection. We shall therefore proceed to consider whether the policy was broad enough under the statutes to cover the damage sustained by the plaintiff and the judgment recovered therefor.
 

 According to well known canons of interpretation the statute (Section 614-99, General Code) must be read into the policy.
 
 Ins. Co.
 
 v.
 
 Leslie,
 
 47 Ohio St., 409, 24 N. E., 1072, 9 L. R. A., 45;
 
 Robbins
 
 v.
 
 Hennessey,
 
 86 Ohio St., 181, 99 N. E., 319;
 
 Verducci
 
 v.
 
 Cas. Co. of America,
 
 96 Ohio St., 260, 117 N. E., 235.
 

 By the statute the liability insurance policy must be satisfactory to the commission and in such amount and terms as the commission may deem necessary to adequately protect the interest of the public and shall cover loss to persons by injury or death resulting from the negligence of the insured transportation company. So the purpose in requiring such a policy is, in the last analysis, the protection of the traveling public. To attain this purpose the policy must be given a liberal and broad interpretation in favor of the insured and those claiming under and through the insured.
 

 True it is, Great Eastern Stages, Inc., was certificated to operate only over specified routes. Yet it could not have been within the contemplation of the parties to the insurance contract that the bus would never move off the specified route or that it would never be operated except when in passenger service.
 

 Busses operating in the common carriage of passengers must be serviced and repaired and, when not in use, must be housed; so for these purposes they must be taken to service stations, repair shops or
 
 *142
 
 garages. Moreover in accomplishing these ends it is often necessary to leave routes specified in the certificate of public convenience and necessity granted by the commission. Such movements of a bus, not engaged in carriage at that time, would not be limited to specified routes for those might not lead to the proper destination; nor can it be said that a certificated common carrier has ceased to operate as such in doing things incidental to the repairing, servicing and housing of its busses. It would be a very narrow construction to hold that such operation ceased when it became necessary to unload passengers and drive around the square to a garage for repairs. In doing reasonably necessary traveling upon highways to accomplish these incidental things the common carrier is as much engaged in the business of common carriage as when actually transporting passengers upon specified routes. See
 
 Rusch
 
 v.
 
 Mielke,
 
 234 Wis., 380, 291 N. W., 300;
 
 Liberty Mutl. Ins. Co.
 
 v. McDonald, 97 F. (2d), 497.
 

 That the route traveled by the bus is one of the best and most direct between Columbus and Cleveland is a matter of common knowledge, and the traveling-done was reasonably necessary to take the bus to the garage in the city of Cleveland for repairs. We can only conclude that the liability insurance policy covered the bus while so traveling.
 

 The trial court did not err in sustaining- the demurrer to the answer and the Court of Appeals did not err in affirming- the judgment of the trial court. The judgment of the Court of Appeals is, therefore, affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Turner, Matthias, Hart, Zimmerman and Bettman, JJ., concur.