Bell, J.
 

 The question presented by this record 'is whether the Court of Appeals erred in affirming the judgment of the Court of Common Pleas which refused to declare as a matter of law that Yona was not covered by the required policy of insurance at the time of the collision on July 5,1942.
 

 There is no dispute that Glenn Cartage was at the time of the collision a private motor carrier operating under a permit issued by the Public Utilities Commission.
 

 The permit authorized Glenn Cartage to engage in certain transportation business for hire over the public highways. Having accepted and operated under such permit, it was bound to comply with the provisions of law with respect to such operation.
 

 Section 614-115, General Code, reads in part as follows :
 

 “No permit shall be issued by the commission to any private motor carrier until there shall have been filed with the commission a liability insurance certificate, policy or bond satisfactory to the commission in such sum and with such other terms and provisions
 
 as the commission may deem necessary adequately to protect the public,
 
 having due regard for the number of persons and amount of property affected, which certificate, policy, policies or bonds, shall insure the private motor carrier and each employer authorized in its permit against loss sustained by reason of the death of or injury to persons and the loss of or dam
 
 *96
 
 age to property resulting from the negligence of such private motor carrier, its agents and employees. * * * ” (Emphasis supplied.)
 

 The policy upon which this supplemental action is predicated was executed in conformity with the above-quoted statute which became a part of the contract as fully as if rewritten therein. See
 
 Ins. Co.
 
 v.
 
 Leslie,
 
 47 Ohio St., 409, 24 N. E., 1072, 9 L. R. A., 45;
 
 Robbins
 
 v.
 
 Hennessey,
 
 86 Ohio St., 181, 99 N. E., 319;
 
 Mitchell, Admx., v. Great Eastern Stages, Inc.,
 
 140 Ohio St., 137, 42 N. E. (2d), 771, 141 A. L. R., 624.
 

 Section 614-115, General Code, makes it clearly apparent that the General Assembly intended to protect the, public from loss or damage due to the operation of motor vehicles when operating under a permit granted by the Public Utilities Commission.
 

 If that purpose is to be attained, the policy must be given a broad and liberal interpretation in favor of the insured and those claiming under or through such insured.
 

 In
 
 Duncan
 
 v.
 
 Evans,
 
 134 Ohio St., 486, 17 N. E. (2d), 913, the court, in commenting on the purpose of the statute, said:
 

 “Apparently the Legislature intended to protect the public against loss from negligence on the part of anyone
 
 using the highioay in the business of transportation by motor truck.”
 
 See, also,
 
 Mitchell, Admx.,
 
 v.
 
 Great Eastern Stages, Inc., supra.
 

 Section 614-104, General Code, provides as follows:
 

 “No private motor carrier as defined in the preceding section shall operate any motor vehicle for the transportation of persons or property, or both, for hire, on any public highway in this state except in accordance with the provisions of this chapter. And no such private motor carrier shall continue or commence its operation as such in this state without first
 
 *97
 
 obtaining a permit from the Public Utilities Commission as provided in this chapter.”
 

 Under the authority of the statutes the Public Utilities Commission required that a special endorsement be attached to the policy. That endorsement attached to the policy in the instant case reads as follows:
 

 “The policy to which this endorsement is attached is written in pursuance of Sections 614-2, 614-2a and Sections 614-84 to 614-120, inclusive, General Code of Ohio, and the rules of the Public Utilities Commission of Ohio. The purpose of this endorsement is to make certain, during the term of said policy and any renewal thereof, the liability of the insurance company to any person injured in person, or property, within the state of Ohio, by the negligence of the insured as hereinafter set forth. Any violation or infraction of any law or any rules or regulation of said commission, or of any term of any certificate, permit or registration shall not relieve the insurance company of liability.
 

 “In consideration of the premium stated in the policy to which this endorsement is attached, the insurance company agrees to pay to the judgment creditor any final judgment rendered against the insured upon a liability hereunder within the limits set forth in the policy, and further agrees that upon failure of the insured to pay any such final judgment such judgment creditor may maintain an action against the insurance company in the proper court to compel such payment.
 

 “For valuable consideration received by it, the said insurance company, by the policy of insurance to which this endorsement is attached, hereby insures and agrees to indemnify the insured during the term of said policy and any renewal thereof, against loss sustained by reason of the death of, or any in
 
 *98
 
 jury to, any person or .persons, except employees of the insured engaged in the course of their employment, and for loss' of or damage to property, including baggage and personal effects of passengers (in excess of $50), except property of the insured and cargo, within the state of Ohio, resulting from the negligence of the insured,
 
 while operating any vehicle or vehicles of any hind, character or description in motor transportation company service or private motor carrier service; ivhether or not such vehicle or vehicles be listed in said policy of insurance or ivith the Public Utilities Commission of Ohio.
 
 The foregoing is in addition to all liability from risks provided for in said policy. For the purpose of determining any additional premium due the insurance company, the insured shall furnish the insurance company every thirty (30) days with a complete description of all vehicles used by the insured and not specifically described in the policy.
 

 “Whenever the word ‘insured’ appears in this endorsement, it shall be held to mean the
 
 motor transportation company, or private motor carrier
 
 named in the policy,
 
 its agents and■ employees, and also held to mean any independent contractor of said motor transportation company or private motor carrier, engaged in transporting persons or property, or providing or furnishing such transportation service,
 
 and also held to mean each employer of a private motor carrier authorized in its permit or registration against loss sustained by reason of the death of or injury to persons and the loss of or damage to property resulting from the negligence of such private motor carrier, its agents and employees.
 

 “No condition, provision, stipulation, or limitation contained in the policy or any endorsement thereon, nor the violation of any of the same by the insured shall affect in any way the right of any person injured
 
 *99
 
 in person or property, within the state of Ohio, by the negligence of the insured,
 
 while
 
 operating as aforesaid, or relieve the insurance company from the liability provided for in this endorsement or from the payment to such person of any judgment within the limits set forth in the policy, but the conditions, provisions, stipulations, or limitations contained in the policy or in any other endorsement thereon shall remain in full force and be binding as between the insured and the insurance company.” (Emphasis added.)
 

 We assume that had Yona been hauling a load for Glenn Cartage at the time of the collision, there could be no legitimate question that the policy covered the operation. However, Ocean contends with great vigor that because Yona was operating his tractor, without the trailer, between the repair shop in Akron and his home in Canton, that operation was not covered by the policy.
 

 There is evidence in the record, which, if believed, would justify the conclusion that Vona was acting under the direct instructions of Glenn Cartage at the time of the collision. That narrows our question to what is meant by the following phrase, found in the Public Utilities Commission endorsement attached to and made part of the policy:
 
 “* *
 
 #
 
 ivhile operating any vehicle or vehicles of any hind, character or description in motor transportation company service or private motor carrier service.”
 
 (Emphasis supplied.)
 

 Ocean insists that the policy covers the vehicles only while actually engaged in hauling. That contention was considered and repudiated by this court in a unanimous decision in the
 
 Mitchell
 
 case,
 
 supra.
 

 The syllabus of that case reads as follows:
 

 “1. A liability insurance policy filed and approved pursuant to Section 614-99, General Code, must be interpreted in the light of that section so as to give effect to the legislative intent.
 

 
 *100
 
 “2. Such a policy, which by its terms indemnifies the insured-against loss by injury or death from the negligence of the insured while operating as a common carrier by bus under a certificate of public convenience and necessity issued -by the Public Utilities Commission,
 
 covers the movement of such bus over whatever route is reasonably necessary in going to a garage or shop for repair, although not then being operated for the carriage of passengers.”
 
 (Emphasis supplied.)
 

 Judge Williams, writing for the court, says at pages 141 and 142:
 

 “Busses operating in the common carriage of passengers must be ^serviced and repaired and, when not in use, must be housed; so for these purposes they must be taken to service stations, repair shops or garages. Moreover in accomplishing these, ends it is often necessary to leave routes specified in the certificate of public convenience and necessity granted by the commission. Such movements of a bus, not engaged in carriage at that time, would not be limited to specified routes for those might not lead to the proper destination; nor can it be said that a certificated common carrier has ceased to operate as such in doing things incidental to the repairing, servicing and housing of its busses. It would be a very narrow construction to hold that such operation ceased when it became necessary to unload passengers and drive around the square to a garage for repairs.
 
 In doing reasonably necessary traveling upon highways to accomplish these incidental things the common carrier is as much engaged in the business of common carriage
 
 as when actually transporting passengers upon specified routes. See
 
 Rusch
 
 v.
 
 Mielke,
 
 234 Wis., 380, 291 N. W., 300;
 
 Liberty Mutl. Ins. Co. v. McDonald,
 
 97 F. (2d), 497.” (Emphasis supplied.)
 

 True, that case involved a common carrier of pas
 
 *101
 
 sengers by motor busses. However we can discern no good reason, and none has been advanced, for any distinction in the legal principles to be applied to a common carrier of passengers by motor bus and to a private carrier of freight by tractor-trailer, if we keep clearly in mind that the purpose of the statutes relating to the furnishing of a certificate, policy or bond is for the protection of the general public.
 

 Applying the legal principle announced in the
 
 Mitchell case
 
 to the situation here presented, to wit, that the collision and damage occurred while the tractor, after being repaired, was being driven to a place to get the trailer and thence to the plant of Glenn Cartage to resume hauling for it, the conclusion is inescapable that during any or all parts of that operation the equipment was within the coverage of the policy. That is unmistakably true unless we were willing to recede from the position established by the
 
 Mitchell case.
 
 In the instant case the movement was in the transportation service within the meaning of the policy, although such vehicle was not then being operated for the transportation of freight.
 

 The court is unwilling to restrict the construction and interpretation of the policy to the extent of saying that, as a matter of law, the operation of the tractor at the time of the collision was not within the coverage of the policy. It therefore follows that the judgment of the Court of Appeals should be and hereby is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Zimmerman, Williams and Turner, JJ., concur.
 

 Matthias and Hart, JJ., dissent.