BOULTER et al. v. COMMERCIAL STAND-
ARD INS. CO.
No. 27857–R.

District Court, N. D. California, S. D.
July 26, 1948.

396

Nathan G. Gray, of Berkeley, Cal., for plaintiffs.

Robert Cathcart and Dana, Bledsoe & Smith, all of San Francisco, Cal., for defendant.

YANKWICH, District Judge.

I.

The Reserved Motion for Directed Verdict.

The Defendant's Alternative Motions.

The plaintiffs, by their action, sought to recover from the defendant a total of $5,118.76, with interest, alleged to be due on a judgment secured by them on September 16, 1947, in the Superior Court of the State of California, in and for the City and County of San Francisco, against Allen J. Warner and Robert W. Woodrow.

Warner and Woodrow were co-partners engaged in the transportation of property for hire, as a business, over public highways in the State of California, by means of motor vehicles. They had been authorized by the Railroad Commission of California to operate such business, and obtained a permit, as required by the law of California.[1] When the permit was issued, they were required by the Commission to secure a policy of public liability. The policy was issued by the defendant on April 19, 1946, and was in effect on June 22, 1946, when the accident for which the recovery had been had in the Superior Court action occurred. The defendant, having refused to pay the judgment, this action was instituted. A motion for a directed verdict, made by the defendant at the close of the plaintiffs' case, was denied. At the conclusion of all the evidence, the defendant again moved for a directed verdict. Action on the motion was reserved.[2] The jury returned a verdict in favor of the plaintiffs. The defendant has moved for a judgment notwithstanding the verdict, or, in the alternative, for a new trial.

[1] California Highway Carriers Act, Sections 1, (c, f), 3; Deering's General Laws, Act 5129a, Secs. 1 (c, f), 3.

[2] Federal Rules of Civil Procedure, Rule 50(b), 28 U.S.C.A. following section 723c. See, Dickerson v. Franklin Nat. Ins. Co., 4 Cir., 1942, 130 F.2d 35; Western Union Telegraph Co. v. Dismang, 10 Cir., 1939, 106 F.2d 362, 363, 364; Howard v. Swagart, App.D.C.1947, 161 F.2d 651, 655; Cone v. West Virginia Pulp & Paper Co., 1947, 330 U.S. 1212, 67 S.Ct. 752, 91 L.Ed. 849; Fratta v. Grace Line, Inc., 2 Cir., 1943, 139 F.2d 743.

## II.

### The Decisive Question.

■ Under the interpretation which the Supreme Court has placed on Rule 50(b), we are required to rule on both motions.[3] The decision to be arrived at depends on our answer to one question:

Was the accident and the consequent injury to the plaintiffs, for which they recovered, in the Superior Court of the State of California, the judgment sued on here, within the terms of the public liability policy issued by the defendant?

And the answer is conditioned on the meaning of Declaration No. 5 in the policy, which reads:

"The automobiles described are and will be used only for transportation of merchandise purposes and will be operated as follows, and this insurance covers for no other use or operation:"

■ Compliance with the statutory insurance requirement is a condition precedent to the granting of a permit by the California Railroad Commission.[4]

Under the Insurance Code of California, common carrier liability insurance includes insurance against any loss "from liability of a common carrier for accident or injury, fatal or nonfatal, to any person."[5] And, while such liability includes any loss for which the peril insured against was the proximate cause, it excludes any liability "for a loss of which the peril insured against was only a remote cause."[6]

The collision between the truck owned by the defendant and the automobile of the plaintiffs, which resulted in injury to them, occurred in Humboldt County, California, at a distance of three miles from the town of Scotia, on Public Highway 101. Warner, one of the partners in the trucking business, is our sole source of information as to the circumstance under which he found himself on June 22, 1946, with the truck, without the trailer, at the place where the accident occurred. His story is contradictory. The version he gave on the first day of the trial as to the object of his trip from San Francisco differs from that which he told at the trial in the Superior Court, and at a hearing in this court in an action for declaratory judgment, to which he was made a party, and in which a declaration of non-coverage was secured against him and his co-partner.[7]

---

[3] Montgomery Ward & Co. v. Duncan, 1940, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147.

[4] The Highway Carriers Act, Secs. 5, 6 & 7, Deering's General Laws, Act 5129a, Secs. 5, 6 & 7.

[5] California Insurance Code, Sec. 110.

[6] California Insurance Code, Sec. 530.

[7] The action for declaratory judgment was instituted by the defendant in this case for the purpose of securing a declaration of non-liability. The plaintiffs here were named parties defendant, summons directed to them was issued, *but they were not served*. Warner defaulted. After a hearing before the Honorable Louis E. Goodman, one of the Judges of this court, a judgment was entered on August 14, 1947, decreeing that the accident was *not* covered by the policy. A similar judgment was entered on October 27, 1947, against the copartner, Robert W. Woodrow, after his default. The defendant in this case pleaded this judgment as res judicata. The portion of the Answer which stated this plea was stricken, on motion, by the Honorable Michael J. Roche, on March 1, 1948. At the trial, the defendant sought to restore this defense, but I declined to do so, agreeing with the view of Judge Roche that the judgment was binding only on the parties who were served with process and appeared or defaulted, and not on the plaintiffs, who, although made parties, *were not served*, and *did not appear*. The case cited by the defendant, Bernhard v. Bank of America, 1942, 19 Cal. 2d 807, 811–813, 122 P.2d 892, does not call for a contrary ruling. It recognizes the principle which limits the binding effect of a judgment to parties and their privies. *The plaintiffs here were not represented in that action by the defaulting partners. There was no identity of persons or of cause of action, under such circumstances as result in estoppel by judgment.* See, 50 C.J.S., Judgments, §§ 601, 648, 768; and see, Tait v. Western Maryland Ry. Co., 1933, 289 U.S. 620, 623, 53 S.Ct. 706, 77 L.Ed. 1405; Hardy v. Rosenthal, 1934, 2 Cal.App.2d 442, 444–446, 38 P.2d 412; Sasser v. First Joint Stock Land Bank, 1938, 5 Cir., 99 F.2d 744, 745; Rheinberger v. Security Life Ins. Co., 1945, 7 Cir., 146 F.2d 680, 683.

In those proceedings, he insisted that the trip from San Francisco, where his business is located, to a small lumber town and resort thirty miles south of Eureka, where his sister resides, *was purely a pleasure trip*. He took his mother and his wife to see his sister, and to vacation. At the trial here, he claimed that the trip combined *both business and pleasure*. The business feature of the trip lay in the fact that he carried some 750 feet of pipe and some furniture and stoves for his sister, for which she paid him $75. After his arrival in Humboldt County, he remained nearly a week, during which he assisted in the laying of a water line, leaving the work to be finished by more expert mechanics. He returned to San Francisco, a distance of some 250 miles, on June 22, 1946, leaving behind the trailer, which weighs 5 tons, and has a capacity of 15 tons. There was still some pipe on it, and some of the goods which he had brought up. In fact, on his second trip to San Francisco, he took back a large stove which his sister could not use. His wife accompanied him on the return trip. the sole object was to pay a premium on the liability policy here involved, which was due June 22, 1946, and which he claims he paid with the cash into which he converted the travelers' checks in the sum of $75, which his sister had given him in payment for transporting the pipe and the household goods.

After the motion for a directed verdict had been made at the conclusion of all the testimony, Warner was recalled for the purpose of amplifying the version given the day before, and particularly, the statement that in returning to San Francisco, he also had in mind soliciting trucking business from a contractor residing at San Jose—a Mr. Dowdell. So, on the second day of the trial, he added that he had in mind soliciting from Dowdell and another contractor for whom he had previously transported materials, but that, as a fact, he did not do so after reaching San Francisco. On the contrary, after paying the premium, he started back for Humboldt County, where he picked up the trailer returning to San Francisco once more.

■ We are confronted here with the inherent improbability of a story, which bears almost on the fantastic. Motivation appears in the fact, admitted by Warner on the stand, that he made no mention whatsoever of the transportation of the pipe when he reported the accident to the highway patrol officer who interviewed him at the scene, or to the agent of the defendant, to whom he gave a full statement of the accident, which was reduced to writing and signed by him. *In these statements, made shortly after the accident, the aim of the trip was given as a vacation for his mother, wife, and himself.* He claimed that the reason for the omission of the fact that he was carrying the pipe and the household goods was that he thought it unimportant. He admitted, however, that he began to think about the possibile significance of the transportation feature of the trip, when, in talking to other truck operators, they reminded him that this transportation might have a bearing upon the liability insurance which he carried. One fact stands out in this narrative: The claimed main purpose of the return trip was to pay the premium. *This was, in fact, its sole purpose, because we cannot consider any intention not carried into effect, such as solicitation of business.*

### III.

### The Law Applicable.

■ It is to be borne in mind that we are interpreting a contract which contains a condition or limitation of liability, regardless of who has the burden of proof.[8] Liability does not attach unless the truck, whether alone or with the trailer attached, was *actually* being used in the transportation of merchandise for hire. And when the facts are not disputed,— whether the truck was, at the time of the accident, engaged in the sole activity cov-

---

8 See, Zohner v. Sierra Nev. L. & Co., 1931, 114 Cal.App. 85, 90, 299 P. 749; Cardoza v. West American Commercial Ins. Co., 1935, 6 Cal.App.2d 500, 502, 44 P.2d 668; Ells v. Order of United Commercial Travelers, etc., 1942, 20 Cal.2d 290, 304, 125 P.2d 457.

ered by the policy is a question of law for the court.[9]

In interpreting exceptions or limitations of the type here involved, courts have adopted a latitudinarian rule of construction. And, if it appear that a vehicle covered by the policy, while not strictly used in the activity to which the exception limited it, was being used in the doing of something which, either under the terms of the policy, or under a broad rule of construction, could be considered "incidental" to the main activity, courts will not hesitate to find liability. Illustrative are the following:

When a policy covered a vehicle operated as a "jitney bus," the fact that, at the time of the accident, it was on a different route than the route to which it was limited by municipal ordinance does not affect liability.[10]

Insurance of an automobile while used in the business of "auto tours" applied to the return trip to a passenger's home, when, by reason of bad weather, the trip to the real estate development was cancelled.[11]

Liability has also been found when there was deviation from the route of a truck,[12] where a tractor and trailer were standing empty on the highway after they broke down and their cargo was removed,[13] when the vehicle turned into a garage or shop for repair,[14] and when a motor bus, after arriving at its terminal, traversed the streets of a city for the purpose of being gassed or parked.[15]

Behind all these cases runs the norm that if the vehicle, at the time of the accident, can be said to be on a mission incident to the object to which its use is limited, the courts will give full effect to the policy.

*However, if the vehicle is doing something totally unrelated to the use or the physical incident which resulted in the accident is not contemplated by the policy, liability does not exist.* Thus, indemnity insurance on vehicles used "incidental to business of funeral director" does not include use of an automobile to transport, for hire, a wedding party.[16]

A "collision" does not include the turning over of an automobile on the edge of a road without striking or colliding with another object other than the ground,[17] or the striking of the road with the body of an automobile when the front axle broke.[18]

A policy of insurance indemnifying against risk incident to the hauling of coal with trucks does not cover the use of a truck by one of the insured's employes for pleasure, after working hours.[19]

The reason back of these cases has been stated in this language:
"While it is true that insurance contracts should be construed most strongly against the insurer (French v. Fidelity & Casualty Co., 135 Wis. 259, 115 N.W. 869, 17 L.R.A., N.S., 1011; Kelly v. Fidelity Mut. L. Ins. Co., 169 Wis. 274, 172 N.W. 152, 4 A.L.R. 845), yet they are subject to the same rules of construction applied to the language of any other contract. *It is a fundamental*

---

[9] Universal Automobile Ins. Co. v. Noel, 9 Cir., 1933, 64 F.2d 916; Moblad v. Western Indemnity, etc., Co., 1921, 53 Cal.App. 683, 200 P. 750; Sumida v. Pacific Automobile Ins. Co., 1942, 51 Cal. App.2d 472, 125 P.2d 87.

[10] Smith v. California Highway Indemnity Exchange, 1933, 218 Cal. 325, 23 P.2d 274.

[11] Davis v. California Indemnity Exchange, 1931, 118 Cal.App. 403, 5 P.2d 447.

[12] Central Mutual Ins. Co. v. Tartar, 6 Cir., 1937, 92 F.2d 839.

[13] Liberty Mutual Ins. Co. v. McDonald, 6 Cir., 1938, 97 F.2d 497.

[14] Mitchell v. Great Western Stages, 1942, 140 Ohio St. 137, 42 N.E.2d 771, 141 A.L.R. 624.

[15] American Fidelity & Casualty Co. v. McWilliams, 1937, 55 Ga.App. 658, 191 S.E. 191; and see, Johnson Transfer & Freight Lines v. American National Fire Ins. Co., 1935, 168 Tenn. 514, 79 S.W.2d 587, 99 A.L.R. 277; Zelber v. Commonwealth Casualty Co., 1930, 106 N.J.L. 611, 150 A. 243.

[16] Heritier v. Central Indemnity Co., 1942, 109 N.J.L. 313, 162 A. 573.

[17] Moblad v. Western Indemnity Co., 1921, 53 Cal.App. 683, 200 P. 750. See also, Bell v. American Ins. Co., 1921, 173 Wis. 533, 181 N.W. 733, 14 A.L.R. 179; Flythe v. Eastern Caroline Coach Co., 1928, 195 N.C. 777, 143 S.E. 865.

[18] Bell v. American Insurance Co., supra.

[19] Gudbrandsen v. Pelto, 1939, 205 Minn. 607, 287 N.W. 116.

*rule that the language of a contract is to be accorded its popular and usual significance. It is not permissible to impute an unusual meaning to language used in a contract of insurance any more than to the language of any other contract.* The incident causing the damage to the automobile here in question is spoken of in common parlance as an upset or tip-over. If it were the purpose to insure against damage resulting from such an incident, why should not such words, or words of similar import, have been used? We cannot presume that the parties to the contract intended that an upset should be construed as a collision in the absence of a closer association of the two incidents in popular understanding." [20] (Emphasis added)

It is evident from a consideration of these cases that the use of a portion of the insured equipment, the truck part, to return to the place of origin, San Francisco, 250 miles away, *not* for the purpose of picking up a new load, or beginning a new haul, or storing or repairing the truck, *but* for the purpose of paying a premium on an insurance policy on the truck, is not an act incidental to the transportation of goods on the truck or trailer.* Nor, for that matter, is the soliciting of business an incidence of such transportation. To be accessory to the business in which the truck was used, it would have to be covered by a policy which, either did not include any limitation, or insured generally against *any act or acts of the defendant while engaged in trucking for hire.* But the policy here under consideration *was not so comprehensive.* The defendant did not insure against all the risks of the plaintiffs while engaged in the business of trucking, but only against a specific risk. Otherwise put, it insured the automobiles when *"used only for transportation of merchandise purposes."* (Emphasis added)

The Railroad Commission rider attached to the policy, which is reproduced in the margin, did not enlarge on the coverage.[21] Its aim, as I stated at the

---

[20] Bell v. American Insurance Co., supra, 173 Wis. at page 734, 181 N.W. at page 734. The language just quoted was adopted by the California District Court of Appeals in Moblad v. Western Indemnity Co., supra, a case which, in turn, has the approval of the Circuit Court of Appeals for the Ninth Circuit. See, New Jersey Ins. Co. v. Young, 9 Cir., 1923, 290 F. 155.

[21] "The policy to which this endorsement is attached is an Automobile Bodily Injury Liability and Property Damage Liability policy, and is hereby amended to assure compliance by the insured, as a motor carrier of property, with appropriate provisions of law (Highway Carriers' Act, Statutes 1935, Chapter 223, as amended [Gen.Laws, Act 5129a]; City Carrier's Act, Statutes 1935, Chapter 312, as amended [Gen.Laws, Act 5134]; and Public Utilities Act, Statutes 1915, Chapter 91, as amended [Gen.Laws, Act 6386]); and with the pertinent rules, orders, and regulations of the Railroad Commission of the State of California.

"In consideration of the premium provided for in the policy of which this endorsement is made a part the Company agrees that within the classes of coverage provided by the policy it will pay any final judgment rendered against the insured for bodily injuries to or death of any person or persons other than the named insured, or damage to or destruction of property, or both, arising out of the ownership, maintenance or use of any vehicle operated under authority of the aforesaid statutes, although such vehicle may not be specifically described in the policy; that the judgment creditor may maintain an action in any court of competent jurisdiction to compel such payment; that the right of any person, firm or corporation to recover under the policy shall not be affected by any act, omission, or misrepresentation of the insured or his employees with regard to any warranty, condition, declaration, or provision of the policy; and that the policy shall remain in full force and effect notwithstanding such act, omission or misrepresentation or the violation of any warranty, condition, declaration or provision of the policy by the insured or his employees; provided, however, that this endorsement shall not be construed to impose any obligation on the Company for which it would not be liable independently hereof with respect to (1) bodily injuries to or death of employees of the named insured arising out of or in the course of their employment, (2) bodily injuries to or death of any person occurring while such person is riding in or upon or entering or alighting from any vehicle covered by the policy, (3) loss of or damage to property owned by, rented to, in charge of, or transported by the insured, or (4) any loss arising out of any operations of the insured ex-

argument, was to protect the public against certain defenses arising from violations of the law by employees, unauthorized use and the like, which might defeat liability. It did not, and could not, change a coverage limited to *a specific use* to a general coverage of the truck, *regardless of the use*. And, insofar as any of the cases outside of the Ninth Circuit or of California [22], hold to the contrary, they do not require assent. For, aside from the fact that in the face of a conflict of authorities, we may choose those which seem to us the more logical, the case before us, *being a diversity case*, is controlled by state law.[23]

Rejecting an identical contention as to the effect of an obligatory rider imposed by a Kansas statute, the Circuit Court of Appeals for the Tenth Circuit said:

"Defendants argue that the effect of the rider required by the Corporation Commission was to make plaintiff liable under the policy for damage resulting while the truck was operated *for pleasure, notwithstanding that such loss was expressly excluded from coverage*. They construe that part of the rider stating that no violation of any of the provisions of the policy by the insured should relieve the company from liability thereunder to mean that the company would be liable for any damage suffered by the insured, whether resulting while the truck was being operated *in his business of a contract carrier or outside of such business.*

"The only power the Corporation Commission has is to adopt rules that will effectuate the statute. It may not adopt any regulation changing the statutory liability. Dunn v. Jones, 143 Kan. 218, 53 P.2d 918. No doubt the Legislature could have required as a prerequisite to the issuance of a

---

cept operations authorized or for which authorization is required under the aforesaid statutes. The insured agrees to reimburse the Company for any payment made by the Company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the Company would not have been obligated to make under the provisions of the policy, except for the agreement contained in this endorsement.

"The Company further agrees that such insurance as is afforded by the policy and this endorsement against liability for injuries to or death of persons and damage to or destruction of property shall not be cancelled, rescinded, or suspended, nor shall the cancellation, rescission, or suspension of the policy or of this endorsement take effect, nor shall the policy or this endorsement become void for any reason whatsoever, except by the expiration of the term for which it is written, until the Company shall have first given ten days' notice in writing to the Railroad Commission of the State of California at its office, State Building, San Francisco, California. Said ten days' notice shall commence from the date notice is received at said office of said Commission.

"The Company further agrees that if the policy shall be cancelled or suspended or otherwise terminated, and shall thereafter be reinstated, notice in writing of such reinstatement shall immediately be given by the Company to said Commission at its said office.

"The Company further agrees that this endorsement shall prevail over any con-

flicting provision in the policy or in any other endorsement now or hereafter attached thereto or made a part thereof; provided, however, that this endorsement shall be of no effect with respect to any liability in excess of $5,000 for bodily injuries to or death of any one person and $10,000 for bodily injuries to or death of two or more persons in any one accident, and $5,000 for damage to or destruction of property of one or more than one claimant in any one accident.

"Nothing in this endorsement shall be construed to limit or restrict any coverage otherwise provided by the policy of which this endorsement is made a part.

"When countersigned by an authorized representative of the Company this endorsement becomes a part of Policy No. MC 170330 issued by Commercial Standard Insurance Company (herein called Company) of Fort Worth, Texas, to Allen J. Warner and Robert W. Woodrow, effective April 19, 1946. Countersigned at San Francisco this 19th day of April, 1946.

"By E. L. Mitchell,

"Authorized Company Representative."

[22] Travelers Mutual Casualty Co. of Des Moines, Iowa, v. Thornsbury, 1936, 276 Ky. 762, 125 S.W.2d 229; Rusch v. Mielke, 1940, 234 Wis. 380, 291 N.W. 300.

[23] Angel v. Bullington, 1947, 330 U.S. 183, 186, 187, 67 S.Ct. 657, 91 L.Ed. 832. See also, King v. Order of United Commercial Travelers, 1948, 333 U.S. 153, 157, 158, 68 S.Ct. 488.

permit that the applicant therefor file an indemnity policy *protecting the public against all loss resulting from the operation of the truck, whether operated in the business of a contract carrier or for pleasure, or otherwise.* * * * *The policy did not include coverage for loss from operations other than those of a contract carrier,* nor did the permit require such coverage. The damage admittedly was incurred while the insured was operating the truck for pleasure and outside the coverage of the policy. Plaintiff was not liable to respondent in damages for the loss suffered by defendants while the truck was being operated other than in the business of assured as a common carrier."[24] (Emphasis added)

Cases which seem to declare a contrary ruling are distinguishable on the facts. The courts found, either in the policies themselves, or in the statutes under which they were issued, *an intention not to limit the use of the vehicle to distinct operations.*

This was the situation in Smith v. California Highway Indem. Exchange.[25] We quote from the opinion:

" * * * Davis was operating his jitney bus on the '29th and Mission' route, which extended from the ferry at the foot of Market street to Valencia street, thence to Twenty-Ninth and Mission. He resided at 311 Jersy street, which is about five blocks from Twenty-Ninth and Mission Streets. *On the afternoon of the accident he had returned to his home for the purpose of taking a rest, in preparation for his night run. He parked his car in front of his home, on a grade. After his rest, he entered his car, released the brake, and backed down grade to the corner of Noe street, where he struck the plaintiff.*

" * * * It cannot be doubted that the Chandler automobile was 'maintained' by Davis for the purpose and business of a jitney bus at the time of the accident. It was operated at the time 'in the service of the subscriber as a jitney bus * * * within the city and county limits of the city of San Francisco,' and it may not fairly be said that the car was at the time operated for any other purpose than that of a jitney bus. Necessarily *Davis was required to keep the car somewhere, and it was kept at his home, which was the place specified in his operator's permit where it was to be kept and which was in the vicinity of the Twenty-ninth and Mission terminus of the route.* At the time of the accident he was operating, using, and maintaining his car with the equipment, plates, and badge placed and displayed as required by local regulations. *The policy did not specify the particular or any route over which the car should be operated.* The limits of the operation thereof were the city and county of San Francisco." (Emphasis added)

It is thus evident that a return trip must *relate directly* to the business in which the vehicle is to engage, or to the specific act of transportation, if the policy is so limited. And this was *not* the case here. The trip on which the accident occurred was, therefore, not a *use* within the terms of the policy.

IV.
Conclusion.

From what precedes, it follows that the motion for a directed verdict, on which ruling has been reserved, should be

---

[24] Foster v. Commercial Standard Ins. Co., 10 Cir., 1941, 121 F.2d 117, 119. And see, Smith v. Republic Underwriters, etc., 1940, 152 Kan. 305, 103 P.2d 858, 860; Hawkeye Casualty Co. v. Halferty, 8 Cir., 1942, 131 F.2d 294; Associated Indemnity Co. v. Bunney, 9 Cir., 1942, 137 F.2d 1, *in which our own Circuit Court of Appeals approves Foster v. Commercial Standard Ins. Co., supra;* Simon v. American Casualty Co., 4 Cir., 1944, 146 F.2d 208; Stewart v. Hoffmeister, 1932, 16 Tenn.App. 495, 65 S.W. 2d 220, 224–226. The following statement from Smith v. Republic Underwriters, supra, 103 P.2d at pages 850, 861, sums up incisively the position here taken:

"There is nothing novel in the limitation of coverage contained in the instant endorsement. For instance, provisions are common which limit coverage to specified *use* of the vehicle. In fact, the instant provision is really one as to *use.* * * * To disregard this limitation in the policy or to hold it invalid would constitute an attempt to expand the insurer's liability, and if accepted by the insurance carrier, an increase in premiums would inevitably result." (Emphasis in text)

[25] 218 Cal. 325, 326, 327, 23 P.2d 274.

granted, the verdict and judgment for the plaintiffs set aside and judgment for the defendant entered.[26]

This conclusion still calls for the disposition of the motion for a new trial.[27]

I realize that this motion could be granted conditioned on its taking effect only if the judgment notwithstanding the verdict is reversed on appeal.[28]

However, I am of the view that the motion for a new trial should be denied. Obviously, if my interpretation of the insurance policy is correct, the jury's verdict is wrong.

If the jury's verdict is right, it can only be because the case presented a factual situation for their solution.

If this be so, then—despite what is said in this opinion about the unsatisfactory character of the testimony concerning the nature of the trip on which the accident occurred—I should allow the jury's conclusion upon the facts to stand and not substitute my own for it.[29]

The motion for a new trial will, therefore, be denied.

---

[26] Federal Rules of Civil Procedure, Rule 50(b).

[27] Montgomery Ward & Co. v. Duncan, 1940, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147.

[28] Western Union Telegraph Co. v. Dismang, 10 Cir., 1939, 106 F.2d 362, 363, 364; Howard v. Swagart, App.D.C.1947, 161 F.2d 651, 656; McIlvaine Patent Corporation v. Walgreen Co., 7 Cir., 1943, 138 F.2d 177, 179, 180.

[29] Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 1941, 122 F.2d 350, 352–354; Murphy v. United States District Court, 9 Cir., 1945, 122 F.2d 1018, 1020. And see my opinion in Caldwell v. Southern Pacific Co., D.C.Cal.1947, 71 F.Supp. 955, 962, 963.