The **PENNSYLVANIA RAILROAD COMPANY**, Appellant,

v.

The **TRAVELERS INSURANCE COMPANY**, Appellee.

No. 12355.

United States Court of Appeals
Sixth Circuit.

Oct. 19, 1955.

John W. Hackett, Jr., Robert B. Gosline, Toledo, Ohio, on the brief, Shumaker, Loop & Kendrick, Toledo, Ohio, of counsel, for appellant.

Wayne E. Stichter, Erwin R. Effler, Jr., Toledo, Ohio, on the brief, Effler, Eastman, Stichter & Smith, Toledo, Ohio, of counsel, for appellee.

Before ALLEN, MARTIN and STEWART, Circuit Judges.

MARTIN, Circuit Judge.

The Pennsylvania Railroad Company has appealed from an order of the United States District Court adjudging that there is no legal obligation upon the Travelers Insurance Company, under a certain policy of insurance, to defend on behalf of the railroad company against claims asserted against the carrier by two of its employees, Cook and O'Hara. The order adjudged further that there is no duty or obligation upon the insurance company to pay, in whole or in part, any judgment that these two employees may recover against the railroad company for damages sustained by them arising out of a bus accident on October 8, 1951, or any costs or expenses incurred by the railroad company in connection with its defense or settlement of the claims.

Cook and O'Hara brought separate actions against the Pennsylvania Railroad Company under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. They allege that, at the time of their injury, they were performing their duties with the repair and maintenance crew of the railroad company. The carrier filed third-party complaints against an individual, L. A. West, and the Travelers Insurance Company. A contract was in existence between West and the railroad company, under which West agreed to procure and maintain automobile liability insurance on vehicles leased by him to the railroad company during specified operations which were under way at the time of the accident. The pertinent clause of this policy of insurance provided, *inter alia*, that the Travelers would pay, on behalf of the railroad company, all sums which the carrier should become legally obligated to pay as damages resulting from bodily injury caused by accident sustained by any of the railroad company's employees "while being trans-

ported to or from work in or on any vehicle insured" under the policy.

Vehicles insured under the policy were buses and trucks owned by L. A. West and leased by him to the Pennsylvania Railroad Company. The bus involved in the accident in which Cook and O'Hara were injured was included in the coverage of the policy and was in possession of the railroad company and operated exclusively by it and its employees.

On October 8, 1951, Cook and O'Hara, and other supervisory personnel, were quartered at a railroad camp site at Bucyrus, Ohio. The rest of the track maintenance and repair crew was quartered at a railroad camp site at Upper Sandusky, Ohio. For several months prior to and inclusive of that date, Cook had been acting as camp overseer. His duties included general maintenance and repair of camp cars, preparation of noon lunches for supervisory personnel, and driving of buses. For a like period, O'Hara had performed miscellaneous duties, including those of track repairman, bus driver, and machine operator. During the same interim, Klinefelter had served as general foreman of the track maintenance and repair crew and, in that capacity, was authorized to assign members of the crew to particular duties.

Before October 8, 1951, the date of the accident, the two railroad camps had been moved respectively from Dunkirk to Upper Sandusky, and from Ada to Bucyrus. The camp at Upper Sandusky was located on the railroad right-of-way and embraced some railroad cars which were used as living quarters for the crew. Other cars were used for kitchen and dining purposes. Wooden frames and screens had been constructed and used between the dining cars and the kitchen cars at the Dunkirk camp site. When the cars were moved from Dunkirk to Upper Sandusky, this screening equipment was dismantled and removed. Upon establishment of the camp at Upper Sandusky, it was observed that the wooden frames and the screening equipment were missing.

On the morning of October 8, Cook and O'Hara reported for work at the Bucyrus camp site. From there, they proceeded in buses owned by West and leased to the railroad to the Upper Sandusky camp site, where each picked up labor personnel housed there and drove the workers to the job site a mile and a half or two miles away.

After the laborers had been transported to the job site, General Foreman Klinefelter ordered Cook and O'Hara to drive one of the leased buses to the former camp site at Dunkirk to pick up the wooden frames and the screening equipment left there and bring them to the camp site at Upper Sandusky, and to install them between the kitchen and dining cars at the new camp site. O'Hara was ordered to accompany Cook on the trip and to assist in the performance of the work assignment. The two men proceeded directly to Dunkirk, with Cook driving the bus. On arriving there, they did not find the screen equipment, but did find air hoses, pipe couplings, and pipe fittings, all of which were placed in the bus for use in the repair and maintenance of the new camp. With Cook at the wheel, the two men then started in the bus by the most direct route to the Upper Sandusky camp site. At about ten-thirty o'clock in the morning, while they were thus riding, Cook and O'Hara were injured in a road-way accident.

After conducting a hearing, at which evidence was received, the district court, in an oral opinion delivered from the bench, decided that at the time of the accident Cook and O'Hara were not being transported to or from work within the meaning of the Travelers Insurance Company policy covering the liability of the Pennsylvania Railroad Company. The judge stated that, if the men had been injured while being transported in the bus from Bucyrus to Upper Sandusky, where they were to go to work early that morning, the policy would have covered; but that, at the time of the accident, they were "at work" and were not being transported to or from work.

We think this finding is clearly erroneous. By his holding, the district judge construed the ambiguous terms of the policy strictly in favor of the insurer rather than in favor of the insured, as the law demands where there is ambiguity in a policy of insurance. In Bobier v. National Casualty Co., 143 Ohio St. 215, 54 N.E.2d 798, an excellent and soundly reasoned opinion was written by Judge Bell stating the principle that in case of ambiguity in the language used by the insurer in an indemnity insurance policy, the language will be construed most favorably to the insured. In the third syllabus to this case, the Supreme Court of Ohio held that, where an insurer "drafts and issues an automobile indemnity policy, providing therein for insurance against liability resulting from injury to or destruction of property, arising out of the ownership, maintenance or use of an automobile including loading and unloading thereof, but fails to define in the policy what shall constitute 'loading and unloading,' such phrase is ambiguous and will be given the construction most favorable to the insured." See also American Policyholders Insurance Co. v. Michota, 156 Ohio St. 578, 103 N.E.2d 817. This court has said: "If two constructions may reasonably be employed, the courts uniformly enforce the one favorable to the assured." [Citing cases.] Preferred Acc. Ins. Co. v. Rhodenbaugh, 6 Cir., 160 F.2d 832, 836.

It is important to observe that the Supreme Court of Ohio has held that the "duty of a liability insurance company under its policy to defend an action against its insured is determined from the plaintiff's petition, and when that pleading brings the action within the coverage of the policy of insurance, the insurer is required to make defense regardless of its ultimate liability to the insured." Socony Vacuum Oil Co. v. Continental Casualty Co., 144 Ohio St. 382, 59 N.E.2d 199 (first syllabus). See also Bloom-Rosenblum-Kline Co. v. Union Indemnity Co., 121 Ohio St. 220, 167 N. E. 884; and London Guarantee & Accident Co. v. Shafer, D.C.S.D.Ohio, 35 F.

Supp. 647, citing the Ohio authority just mentioned.

Apparently, the district judge considered that the words in the policy, "to and from work," meant a specific trip in the bus from the camp site to the job site. These words, however, are not defined in the policy; and the interpretation given them by the district court would, in our opinion, be strictly against the insured and in favor of the insurer. If the insurer had intended the limited construction, it should have put definitive words into the policy issued by it. The trial court based its interpretation of the policy terms upon the fact, as it stated, that Cook and O'Hara were already "at work" at the time of the occurrence of the accident and that they could not be going to and from work if they were actually "at work." If this were a correct interpretation, there would be small coverage supplied the Pennsylvania Railroad by the policy, for its employees could just as reasonably be said to be "at work" when they boarded the buses at the Bucyrus camp site.

We think that the correct interpretation of the policy is that, when making the trip to Dunkirk, they were traveling in the bus to a job site and that, when making the return trip from Dunkirk to Upper Sandusky, they were making the trip from one job site to another. Such interpretation conforms to the accepted rule of liberal interpretation which has been discussed. We have been referred to no authority construing the phrase, "being transported to or from work," but we think, as appellant contends, that the following cases, decided by the Supreme Court of Ohio or by this court, support the conclusion which we have reached. Wood v. Vona, 147 Ohio St. 91, 100, 101, 68 N.E.2d 80; Leonard v. Murdock, 147 Ohio St. 103, 108, 109, 68 N.E.2d 86; Mitchell v. Great Eastern Stages, Inc., 140 Ohio St. 137, 142, 42 N.E.2d 771, 141 A.L.R. 624; Constitution Indemnity Co. v. Lane, 6 Cir., 67 F.2d 433, 435; Employers Liability Assurance Corp. v. Accident and Casualty Insurance Co., 6 Cir., 134 F.2d 566,

569, 146 A.L.R. 1186; Fidelity & Casualty Co. v. Standard Oil Co., 6 Cir., 162 F.2d 715, per curiam affirmance of D.C.W.D.Ky., 66 F.Supp. 603, Shelbourne, D. J.; St. Paul-Mercury Indemnity Co. v. West Michigan Dock & Market Corp., 6 Cir., 179 F.2d 242, per curiam affirmance of D.C.W.D.Mich., 82 F.Supp. 403, Starr, D. J.

The order of the district court is reversed; and the cause is remanded for further proceedings in conformity with this opinion.