JONESBORO, LAKE CITY & EASTERN RAILROAD COMPANY v. DUNAVANT.

Opinion delivered March 22, 1915.

1. CARRIERS—FREIGHT—LIABILITY.—By the common law a carrier is in effect an insurer of goods entrusted to it for carriage, while the same are being transported, except where the loss occurs by vis major, or by act of the public enemy, or public authority, or from the inherent nature of the goods, and the burden of proving that a loss was occasioned by any of these excepted acts, rests upon the carrier.

2. CARRIERS—FREIGHT—VIS MAJOR.—If there is any negligence on the part of a common carrier of freight which, if it had not been present, the injury to the freight would not have occurred, notwithstanding the act of God, the carrier can not escape liability.

3. CARRIERS—DELAY IN SHIPMENT OF FREIGHT—SPECIAL DAMAGES.—Where defendant carrier was negligent in failing to make a prompt shipment of corn, it will be liable for special damages, when it had knowledge that special damages would result from a failure to make a prompt shipment.

Appeal from Mississippi Circuit Court, Osceola District; W. J. Driver, Judge; affirmed.

*Coleman, Lewis & Cunningham,* for appellant.

1. No negligence is shown. The uncontradicted evidence is that the shipment was accepted subject to interference by high waters, and that every effort was made to carry it to its destination. The delay, however, even if negligent, did not make appellant liable. It is well settled that mere negligent delay on the part of a carrier, followed by an act of God which prevented the performance of the contract of carriage, is not such negligence as will

render the carrier liable for breach of the contract. 36
Am. St. Rep. 838, note; 13 Gray, 481; 115 Mass. 304; 10
Wall. 176; 92 Ark. 573-581; dissenting opinion and author-
ities there cited. There is no proof that appellant would
not have forwarded the car if the levee had remained in-
tact. . The break in the levee intervened between appel-
lant's negligence and the breach of the contract, and ap-
pellant is not liable. 4 Elliott on Railroads, art. 1488;
Wharton on Negligence, § § 73, 558, 559; 55 Ark. 510; 58
Ark. 157.

2.    The court erred in its charge as to the measure of
damages. The contract was to deliver the corn to appel-
lee at Savage Crossing, not at his residence. Had appel-
lee permitted the corn to remain in the hands of appellant,
the latter would have performed its contract, and in that
case it would have been liable for the delay, the measure
of damages being the difference between the value of the
corn at the time and place where it should have been deliv-
ered, and its value when delivery was made, with interest.
74 Ark. 360; 6 Cyc. 525.

When appellee elected to receive the corn at Wilson
and send it back to Osceola, as he had a right to do, appel-
lant's liability on account of the delay ceased. 6 Cyc.
468, note 33.

*J. W. Rhodes, Jr.,* and *W. J. Lamb,* for appellee.

1.    A railway company is liable for delay in ship-
ment where it accepts a consignment for shipment to a
prepay station without demanding the prepayment of
freight. There is no merit in the plea of the "act of
God." Where railroad companies injure shippers by
reason of negligence, the courts do not lend a ready ear,
when the companies are sued for damages, to such a plea,
nor are they quick to hold the Lord responsible for the
companies' negligence. 102 S. W. 11; 6 Ind. App. 57; 32
N. E. 1134; Ray on Neglect of Imposed Duties of Car-
riers, 126; 3 Wood on Railroads, 428; 4 Elliott on Rail-
roads, 1558, 1559; 65 Ind. 188; 32 Am. Rep. 63; 18 Adolph
& Ellis, 785; 2 Shower, 82; 8 Meeson & Welsby, 372.

2.   A railroad company is liable for special damages where it is alleged and proved that the company was advised or knew of an emergency and that special damages would result through neglect.   103 Ark. 522, 527, and cases cited.

HART, J.   H. P. Dunavant sued the Jonesboro, Lake City & Eastern Railroad Company to recover damages on account of the alleged negligent delay in transporting a car of corn.   The jury returned a verdict in favor of the plaintiff in the sum of $187.55 and the defendant has appealed.

The plaintiff proved a state of facts substantially as follows:   On the 2d day of April, 1913, a car of corn was shipped from Hayti, Missouri, over the Frisco railroad through Osceola, Arkansas, to Wilson, Arkansas, consigned to H. P. Dunavant at Savage Crossing on the Jonesboro, Lake City & Eastern Railroad Company's line. The latter company operates a branch line from Wilson to and beyond Savage Crossing and the latter point is nine miles from Wilson and about the same distance from Osceola.   This car of corn was billed "Shipper's Order," and arrived at Wilson on the 5th day of April, 1913.   Dunavant paid the freight and draft attached to the bill of lading and procured the bill of lading on the 5th day of April, 1913.   The agent of the Frisco at Osceola called the latter's agent at Wilson and advised him that the draft was paid.   The Frisco's agent at Wilson agreed to release the shipment and deliver it over to the Jonesboro, Lake City & Eastern Railroad Company's agents at Wilson.

On the 6th day of April, 1913, Dunavant called up the agent of the Jonesboro, Lake City & Eastern Railroad Company at Wilson and had a conversation with him over the telephone and told the agent that the levee was likely to break and that he needed his corn, and asked the agent to send it out on the first train.   The agent agreed to do this.   On the next day the train left Wilson for Savage Crossing about 10 o'clock in the morning.   The corn did not arrive on that train and Dunavant again

called up the agent of the defendant company over the telephone and told him that the train had gone by and the car of corn had not arrived. The agent replied that he had forgotten to send it but would send it on the next train. The plaintiff heard a train pass Savage Crossing over the line of the defendant's railway the next day but the corn did not arrive. About 5 o'clock in the afternoon on the 9th of April the levee broke and flooded the defendant's line of railroad so that it was not able to operate its trains for about a month thereafter.

The plaintiff then reshipped his corn from Wilson to Osceola and paid the freight which amounted to $25. He had already paid the freight from Wilson to Savage Crossing, amounting to $28.55. He hired wagons to haul the corn from Osceola to his residence at Savage Crossing at a cost of $150. It took fifteen wagons two and a half days to haul the corn, and he paid therefor $4 for each team. This was the only way he could get the corn to his residence. He was a farmer and had no feed with which to feed his stock and was obliged to have the corn hauled by wagon because there was no other corn available that he could buy or borrow.

The testimony on the part of the defendant company tended to show that it did not accept the corn for transportation until after its last train had left Wilson for Savage Crossing on April 7, 1913, and that it did not accept the shipment sooner because it was billed "Shipper's Order" and the expense bill for the car of corn had not been paid. Its agent admitted that the plaintiff called him up and told him that he needed the car of corn with which to feed his stock and said that he promised the plaintiff that he would do the best he could, but told him that the levee was likely to break at any time and he did not know whether or not he could carry the corn.

It was also shown by the railroad company that no trains were run over its road after the 7th of April; that on the 8th of April they were busy clearing the yards of the railroad equipment in order to get it out of the way of the high water; that the St. Francis levee broke on the

afternoon of April 9 and flooded the tracks of the railroad company so that it could not operate trains for more than a month thereafter.

The agent of the railroad company also stated that he did not remember telling Mr. Dunavant that he had forgotten to send the car out on the 7th of April, but said that he might have done so.

(1) By the common law a common carrier is in effect an insurer of goods entrusted to it for carriage while same are being transported, except when the loss occurs by the act of God, of the public enemy or public authority, or from the inherent nature of the goods, and the burden of proving that the loss arose from any of these excepted acts rests upon the carrier. *St. Louis, I. M. & S. Ry. Co.* v. *Pape,* 100 Ark. 269; *St. Louis, I. M. & S. Ry. Co.* v. *Wood,* 99 Ark. 363.

(2) So, under the testimony adduced by the defendant, the jury might have returned a verdict in its favor. On the other hand, it is equally well settled that if there is any negligence on the part of a common carrier which, if it had not been present the injury would not have occurred, notwithstanding the act of God the carrier can not escape responsibility. See *Chicago, R. I. & P. Ry. Co.* v. *Miles,* 92 Ark. 573.

Therefore, under the testimony adduced by the plaintiff, the jury might have found the issue of negligence in favor of him. It will be remembered that according to plaintiff's testimony he paid the draft and expense bill attached to the bill of lading on the 5th day of April and the defendant company on the 6th inst. promised to carry the corn from Wilson to Savage Crossing on its next train; that the agent of the company, after its train had passed Savage Crossing on the 7th of April, told him that it had not carried the corn because he had forgotten it, and that he would send it on the next train. There was also testimony tending to show that another train ran over the defendant's line of road on the 8th day of April.

The question of the defendant's negligence was submitted to the jury under proper instructions, about which no complaint is made, and the finding of the jury that the defendant was guilty of negligence in transporting the corn, being warranted by the evidence, will be upheld.

It is next insisted by counsel for the defendant that the court erred in allowing special damages to the plaintiff. It will be remembered that the verdict of the jury was for $187.55. The plaintiff testified that on the 6th day of April he told the defendant's agent at Wilson that the levee was likely to break at any time, and that he needed his corn badly. The agent promised him that he would send it on the first train. The jury might have inferred from the testimony of both the plaintiff and defendant that the plaintiff lived at Savage Crossing. The evidence shows that there was no way to get the corn to Savage Crosing after the levee broke except to reship it to Osceola and to haul it in wagons from there to plaintiff's residence in Savage Crossing, a distance of nine miles. The plaintiff had already paid the freight from Wilson to Savage Crossing, amounting to $28.55. He also paid the freight to reship the corn from Wilson to Osceola, amounting to $25. He testified that it cost him $150 to haul the car of corn from Osceola to Savage Crossing. This amounted to more than the amount recovered by him.

(3) It will be noted that according to the testimony of the plaintiff the defendant company had notice before it accepted the corn for transportation from Wilson to Savage Crossing that plaintiff would suffer special damages if there were negligent delay in the transportation of the corn. See *Kansas City So. Ry. Co.* v. *Morrison,* 103 Ark. 522, and cases cited.

The judgment will be affirmed.