JOHNSON TRANSFER & FREIGHT LINES, INC., *et al.* v.
AMERICAN NAT. FIRE INS. CO. *et al.*

(*Nashville,* December Term, 1935.)

Opinion filed February 25, 1935.

STRANG, FLETCHER & CARRIGER, of Chattanooga, for appellants.

WILKERSON & WILKERSON and JOHN A. CHAMBLISS, all of Chattanooga, and CORNELIUS, McKINNEY & GILBERT, of Nashville, for appellees.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

From a decree of the chancellor overruling their demurrers, defendants American National Fire Insurance Company and Western Assurance Company have appealed to this court.

The complainants, Johnson Transfer & Freight Lines, Inc., and Highway Express & Transfer Company, Inc., are licensed operators of trucks. The Johnson Company operates a line from Chattanooga to Nashville and the Highway Company operates a line from Atlanta to Chattanooga.

On September 26, 1932, the General Electric Company delivered to the Highway Company at Atlanta a turbine billed for shipment to the Du Pont Rayon Company at Old Hickory, near Nashville. The Highway Company issued a through bill of lading, routing the shipment over its own line and the line of the Johnson Company.

The bill avers that both truck companies owned tractors, in which vehicles no freight was carried. Both companies also owned semitrailers—vehicles resting on two wheels. In handling through freight going over both lines, a semitrailer would be loaded on one line and hauled to Chattanooga by a tractor of that line. At Chattanooga the semitrailer would be turned over to the other line and hauled to the destination by a tractor of the last line. The transportation of this turbine was so handled.

The turbine was loaded at Atlanta upon a semitrailer of the Highway Company and safely hauled to Chattanooga by a tractor of that company. At Chattanooga the semitrailer was turned over to the Johnson Company, attached to a tractor of the Johnson Company, and the shipment started on its way to Old Hickory. En route, near Monteagle, the tractor and semitrailer overturned, fire broke out, and the turbine was badly damaged.

The bill herein was filed by the two transportation companies against the two insurance companies and the Du Pont Rayon Company. Both transportation companies conceded in the bill their liability as carriers for the damage to the shipment. The bill averred that the Highway Company carried a cargo insurance policy with defendant American National Fire Insurance Company in the sum of $5,000 and that the Johnson Company carried a similar policy with defendant Western Assurance Company in the sum of $2,000. It was alleged that due notice of the accident had been given by the two transportation companies to the two insurance companies but that the insurance companies denied liability. The Du Pont Rayon Company was made a defendant to

this bill to the end that said company be required to come into the case and have its rights adjudicated. The Du Pont Rayon Company filed an answer and cross-bill seeking judgment for the amount of the damage to the turbine against both carriers and against both insurance companies. Demurrers to this cross-bill were filed by the insurance companies. As stated above, the chancellor overruled all the demurrers and permitted an appeal to this court.

We consider, first, the question of the liability of the Western Assurance Company. A number of defenses are based on particular provisions of the policy issued by that company which we do not find it necessary to take up separately.

The bill charges, and a rider on the policy indicates, that such policy was issued by the Western Assurance Company to enable the Johnson Company to comply with the provisions of section 5483 of the Code, which is as follows:

"No motor vehicle shall be operated upon any such public highway in this state for the purpose of transporting passengers or property for hire by virtue of such certificate until there shall have been filed with the commission a bond, indemnity undertaking, or policy of insurance, executed by a company, mutual association or reciprocal exchange authorized to execute such instruments in the state and approved by said commission, in such reasonable amount and on such terms and conditions as said commission may prescribe; but such bond, indemnity undertaking or policy of insurance shall be conditioned to pay any judgment rendered against such certificate holder and/or operator (within the limits of said bond, policy or undertaking) as the result of dam-

age due to personal injury or damage to property, arising out of the actual operation of such vehicles, or for damage to or loss of property while in the possession of or under the control of any such operator.''

It will be observed that the statute quoted requires the bond or policy filed with the commission to pay any judgment rendered against the operator of the vehicle ''as the result of damage due to personal injury or damage to property, arising out of the actual operation of such vehicles, or for damage to or loss of property while in the possession of or under the control of any such operator.''

This policy having been issued for the express purpose of enabling the Johnson Company to comply with this statute, as the rider upon the policy shows, the provisions of the statute enter into, and become part of, the policy, and such statutory provisions override and supersede anything in the policy repugnant to such provisions. *Dugger* v. *Insurance Co.*, 95 Tenn., 245, 32 S. W., 5, 28 L. R. A., 796; *Laurenzi* v. *Atlas Ins. Co.*, 131 Tenn., 644, 176 S. W., 1022; *Thompson* v. *Concordia Fire Ins. Co.*, 142 Tenn., 408, 215 S. W., 932; *Riddick* v. *Yorkshire Ins. Co.*, 165 Tenn., 105, 52 S. W. (2d), 166.

It is next urged that the policy issued by the Western Assurance Company only undertook to protect general merchandise and the turbine was not, therefore, within the protection of the policy.

The word ''merchandise'' does not appear either in the rider attached to the policy or in section 5483 of the Code. The rider follows the statute and makes the policy cover ''damage to or loss of property.'' It was property, therefore, not merchandise, which the policy covered. Moreover, while a turbine would not be re-

garded as merchandise, if handled by a country store, we think it may very properly be described as merchandise when handled and shipped by the General Electric Company.

■ It is then insisted that the policy issued by the Western Assurance Company has no provision insuring a trailer and that the company is accordingly not liable for damage to goods carried on a trailer The policy, however, specfically insured goods "loaded for shipment and in transit in or on automobiles operated by the assured within the limits of the United States and Canada and designated as follows: $2,000 No. 26 White 2 1-2 ton 3AD9—508," and others described.

The bill sets out that the particular automobile above described (the one involved in the accident) has no facilities for hauling property of itself, but is a tractor designed to bear a portion of the weight of a semitrailer. The insurance company must accordingly have contemplated when it issued a policy to cover goods transported by this particular automobile that the goods would be transported in some vehicle attached to the machine. The motor number and letters by which the machine is described in the policy would disclose to an automobile insurer, no doubt, the nature of the automobile—that it was only a tractor not designed to carry goods. At any rate, the details of the equipment it proposed to operate were filed with the Railroad and Public Utilities Commission, when this carrier obtained its permit to do business. Since this insurer filed with the commission a policy covering the operations of the scheduled equipment, it cannot, at least so far as the public is concerned, say that it did not have knowledge of the nature of the equipment.

The insurer certainly intended to execute a valid contract in return for the premium received, not to issue a cargo policy and confine its coverage to a vehicle that could carry no cargo.

It is a familiar rule that where the insurer, at the time of the issuance of a policy, has knowledge of existing facts which, if insisted upon, would render nugatory the contract from its very inception, such knowledge constitutes a waiver of conditions in the contract inconsistent with the known facts, and the insurer is estopped thereafter from asserting the breach of such conditions. *McLain* v. *American Glanzstoff Corp.*, 166 Tenn., 1, 57 S. W. (2d), 554; *Life & Casualty Ins. Co.* v. *King*, 137 Tenn., 685, 195 S. W., 585.

It is also assigned for error by the Western Assurance Company that the bill does not aver that the notice required by the policy was given such company. The bill does aver that notice was given to the company. If the notice was insufficient, it was the duty of the company to point out such insufficiency. *Johnson* v. *Scottish Union Ins. Co.*, 160 Tenn., 152, 22 S. W. (2d), 362.

It was objected in the lower court that the bill herein was multifarious. The chancellor overruled this ground of demurrer, and the question is again raised in this court. Where the chancellor, however, in his discretion, rules that a bill is not multifarious, this court will not reverse where the parties have not been prejudiced. We conclude, therefore, that none of the defenses to liability interposed by the Western Assurance Company, upon the policy issued by it, are good.

We are not able to agree, however, that the American National Fire Insurance Company, the insurer of

the Highway Company, is liable for this loss. While, as the initial carrier issuing a through bill of lading, the Highway Company concedes its liability for the loss occurring on the line of the connecting carrier, it does not follow at all that the insurer of the initial carrier is liable for such loss.

As appears from section 5483 of the Code heretofore set out, every motor carrier is required to file a bond or insurance policy to protect those damaged in property or person by its operations. By other provisions of chapter 58 of the Public Acts of 1929, from which section 5483 of the Code is taken, every motor carrier is required to procure from the Railroad and Public Utilities Commission a certificate of convenience and necessity permitting the operations of such carrier. The route of each carrier is prescribed in this certificate. They are not permitted to operate over other routes. Each operator is required to carry its own insurance. We think it could not be said to have been within the contemplation of the Highway Company and its insurer that the policy issued to the Highway Company would cover loss or damage to goods while in the hands of a connecting carrier of the Highway Company. This would be to give an extraordinary scope to the contract of insurance. It would make the insurer liable for loss or damage occasioned by the negligence of a remote and unknown connecting carrier in a distant section of the country. If such policies are to be so construed, the insurer would be required to exact a prohibitive rate.

We are not unmindful of the provisions of section 5483 that the carrier shall be liable for loss or damage to property, while in the possession of, or under the control of, "such carrier." It is true that a connecting car-

rier, handling a through shipment, is regarded as the agent of the initial carrier and that goods in the possession of the agent are said to be in the possession of the principal. *East Tennessee & V. R. Co.* v. *Rogers and Hartsell*, 6 Heisk. (53 Tenn.), 143, 19 Am. Rep., 589; *Atlantic C. L. R. Co.* v. *Riverside Mills*, 219 U. S., 186, 31 S. Ct., 164, 55 L. Ed., 167, 31 L. R. A. (N. S.), 7. Nevertheless, we think that section 5483, prescribing the terms of these carriers' bonds or insurance policies, had in mind that such obligations were to cover loss or damage to property while in the actual possession or under the actual control of the carrier insured, rather than in the carrier's technical possession or custody.

All insurance contracts are personal in their nature, as this court has heretofore observed. *Crouch* v. *Surety Co.*, 131 Tenn., 260, 174 S. W., 1116, L. R. A., 1915D, 966, Ann. Cas., 1916C, 1220. The insurer looks to the integrity and responsibility of the insured. There are hundreds of motor carriers in the United States—some of them irresponsible. We doubt that any insurer would knowingly contract to answer the default of these carriers indiscriminately. We cannot think that section 5483 of the Code contemplates an obligation of the insurer to underwrite connecting carriers as to whose equipment, solvency, reputation, and very identity the insurer necessarily could not be advised.

We accordingly conclude that there is no liability on the part of the American National Fire Insurance Company for this loss.

The defendant insurance companies have interposed demurrers to the cross-bill of the Du Pont Rayon Company. We think these demurrers must be sustained in so far as they challenge the right of the Du Pont

Rayon Company to a direct judgment against the insurance companies. The Du Pont Rayon Company is entitled, as appears from the original bill, to a judgment against the two carriers. The carriers are liable primarily, as they admit. The statute provides that the carrier's insurer shall be liable to pay any judgment rendered against such carrier. A proper decree in this case therefore would be for the Du Pont Rayon Company for the amount of damage to its turbine against the Johnson Transfer & Freight Lines, Inc, and against the Highway Express & Transfer Company, Inc., and a judgment over against the Western Assurance Company in favor of the Du Pont Rayon Company for $2,000.

The chancellor's decree will be thus modified. Half the costs so far accrued will be paid by the complainants and half the costs by the Western Assurance Company.