**TRANTHAM v. CANAL INS. CO.**
**No. 816.**

United States District Court
E. D. Tennessee, Northeastern D.
Nov. 30, 1953.
Supplemental Opinion Dec. 17, 1953.

242

John A. Armstrong, Greeneville, Tenn., for plaintiff.

S. J. Milligan, Greeneville, Tenn., Leatherwood, Walker, Todd & Mann, Greenville, S. C., for defendant.

ROBERT L. TAYLOR, District Judge.

This is an action to recover under a policy of fire insurance for loss of, or damage to, three Diesel tractors, a pickup truck and a gasoline tractor, the amount claimed being $18,151.63, plus interest, plus the statutory 25% penalty. Defendant admits that it issued the policy of insurance, that a fire occurred, that plaintiff furnished notice and proof of loss, and that defendant refused to

pay the loss, but defendant denies that the loss was as extensive as claimed and that its refusal to pay was in bad faith, as defined in the penalty statute.

By way of avoidance defendant relies on certain alleged representations material to the risk as avoiding the policy, particularly that plaintiff had sustained no prior fire loss, that he had sustained less collision losses than he had in fact sustained, and that the insured equipment would not be loaned or rented to others, these representations allegedly being false.

The policy in question was countersigned by an authorized agent of defendant October 25, 1951, and covered a policy period from October 25, 1951, to October 25, 1952. Delivery of the policy occurred before any written application was made, the application in which the alleged misrepresentations appeared bearing date of October 30, 1951. There could have been no reliance on the application in fact, for the reason that none existed when the policy was issued, though the policy recites that it was issued in consideration of the premium "and in reliance upon the statements in the declarations * * *." The policy further refers to the application in its avoidance clause and in the final paragraph, the latter being as follows:

"16. Declarations: By acceptance of this policy the insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance."

Materiality of an application, absent when the policy was issued, is explained from the insurer's viewpoint in that the policy contains provision for cancellation upon five days' notice, a provision that would increase in importance with submission of an application and its possible disclosure of cause for cancellation. Reasoning further, reliance upon representations, though not present when the policy was issued, could provide some support for allowing the policy to stand instaed of cancelling it. Such reasoning, even if somewhat novel, points to a substantial reason why statements in the application should be true for, whether presented before or after issuance of the policy, it could, if false in its representations, become an instrument of fraud.

It cannot, however, be said to have had that effect here. At the time the application was signed, certain information furnished by the insured was noted in pencil on the application form. Thereafter the agent filled in the blanks by typewriter. Several entries in type have no counterpart in longhand. One or more entries in longhand have no meaning in relation to the application and could not be explained by the agent. For example, the words "three small" written in longhand. The agent testified that he thought these words meant three small losses. If he was correct in this interpretation, does such interpretation mean that the three small losses were included in the $3,900 figure, or were they losses in addition to those included in the figure, or do the words mean that three small policies were cancelled? That the agent could furnish the information for such entries is explained by testimony that the agent knew the facts and relied not on what the insured told him, but upon his own knowledge, except where information from the insured was noted in pencil.

Limited though the proof is on the point, it does establish that the person who took the application and obtained the policy was an agent of defendant. The form used was that of defendant. The application was not repudiated, but accepted and thereafter relied on as a means of defeating liability. Mr. Rader, the agent, had employment in addition to writing insurance, the latter being something of a sideline. Licensed fire insurance brokers excepted, by statute in Tennessee "any person who shall solicit an application for insurance shall in all matters relating to such application and the policy issued in consequence

thereof be regarded as an agent of the company issuing the policy, and not the agent of the insured, * * *." Sec. 6087, Williams' 1934 Code. As to this transaction, Mr. Rader was not within the exception applicable to brokers. Nor is it material that he wrote insurance as a sideline. Nor is it material that he may not have been on a search for prospects at the time this transaction was initiated. "Any person who holds himself out as an insurance agent and thus invites and receives insurance business, collecting and transmitting premiums and delivering policies and receipts", is an agent within the meaning of the statute. Maryland Casualty Co. v. McTyier, 150 Tenn. 691, 695, 266 S.W. 767; approved, T. H. Hayes & Sons v. Stuyvesant Ins. Co., 1952, 194 Tenn. 35, 250 S.W.2d 7, 10.

▮ Knowledge of its agent is chargeable to defendant. All statements typed into the application not furnished by the insured or otherwise attributable to him are the statements of the agent. T. H. Hayes & Sons v. Stuyvesant Ins. Co., supra. Being the statements of the agent, they are chargeable to defendant and, even if the application had been relied on in issuance of the policy, would furnish no ground for avoidance.

▮▮ The application, with penciled notations, was signed by the insured before being filled in with typewriting, and the application was not seen by the insured in its filled-in form or at any time after he signed it. With respect to the penciled notations, their nature is such as to exclude reliance on them as ground for cancellation. They would not avoid the policy on grounds of misrepresentation, though it should appear that they were in some particulars false. This, as heretofore observed, is for the reason that the policy was issued prior to the making of the statements in the application, a circumstance which excludes reliance in the issuance of the policy. The penciled notations are meager. Prior undisclosed damage is relied on as a defense. Declaration No. 11 contains the lead in regular print, as follows: "Loss-

es sustained by applicant last five years." Following this in pencil are the words "Little danger," words of uncertain relationship. Tabulation of losses thereafter is for the most part in type. The condition of this application, because of the inadequacy of the penciled notations and the frequency of type unattended by notations, was sufficient to put the insurer on notice that it was incomplete and not truly the application of the insured. It does not appear that the insurer made any inquiry of its agent or of the insured as to the regularity of the application or for information that definitely could be chargeable to the insured. The fire occurred June 23, 1952, about eight months from the time the policy was issued and the application furnished. Sometime thereafter, the insurer made an investigation and on the strength of its disclosures declared the policy void and tendered return of the premium with interest. This was an investigation it should have made more seasonably. Having had in its possession knowledge chargeable to it and an application whose condition put it on inquiry, it is estopped now to assert that it relied on misrepresentations. Johnson Transfer & Freight Lines, Inc., v. American Nat. Fire Ins. Co., 168 Tenn. 514, 521, 79 S.W.2d 587.

The application with its meager penciled notations and words inserted in typewriting, some of which appear to convey a different meaning from those written in pencil, contains sufficient information as to prior losses of insured which, if it had been pursued by the insurer with any kind of diligence, would have led to a discovery of all prior losses.

In life insurance policies the rule of utmost good faith is applied as against the insured. In Life & Casualty Ins. Co. v. King, 137 Tenn. 685, at pages 702–703, 195 S.W. 585, at page 589, the Court said:

"The question remains, however, whether a waiver or estoppel arises where the insurance company has information at the time which, if pursued with reasonable diligence,

would lead to a discovery of the true state of facts regarding the health of the insured, or other matter existing at the time upon which it is sought to base a forfeiture of the insurance, or a defense rested on some clause of the policy. We are of the opinion that, in such case, there is an estoppel."

As applied to fire insurance, the rule would certainly be no more strict. The defendant, accordingly, in failing to pursue the information contained in, as well as that omitted from, the application waived any right it may have had to rely upon alleged misrepresentations made in the application and is now estopped to rely on this defense.

■ One other alleged misrepresentation is pleaded as ground for avoiding the policy. Declaration No. 6 was in response to the question: "Will any equipment ever be loaned or rented to others?" This was answered "No." During the term of the policy one of the insured vehicles was leased for some time. It was not, however, under lease at the time of the fire. Under the heading of exclusions the policy contains the following: "This policy does not apply: * * (b) under any of the coverages, while the automobile is subject to any bailment lease, * * * not specifically declared and described in this policy." As the policy provision here quoted provided an absolute protection against any risk incident to loss while an insured vehicle was leased, the statement that no insured vehicle would be leased was not material to the risk, hence, even if it had been relied on in issuance of the policy, constituted no ground for avoidance or cancellation.

The result is, that plaintiff is entitled to recover for the fire loss and damage, the remaining question being that of the amount of the recovery.

On the subject of damages, two witnesses testified for the plaintiff. One witness testified for the defendant, and it was stipulated by the parties that an absent witness for defendant would have testified as did the one witness who did testify.

Mr. Trantham, the insured, placed the following values upon the vehicles that were destroyed:

Diesel Tractor ADCR 903 .... $10,000.00
Diesel Tractor HDCR 752 ....  7,500.00
Diesel Tractor HDCR 751 ....  7,800.00
Pick-up Truck FC–101 ......  1,250.00

In the same order as just listed, Mr. Easterly, formerly a dealer in the types of vehicles involved here, placed the following values: $8,500, $7,500, $7,500 and $1,295.

These two witnesses were financially interested in the litigation, Mr. Trantham being the insured and Mr. Easterly being an endorser on Mr. Trantham's purchase money notes.

Mr. Roth, witness for the defense, placed the following values on the first four items: $2,190, $3,500, $2,300 and $1,000. The absent witness would have placed the same values on these items.

Damage was sustained, also, by the destruction of parts from gasoline tractor KBS–81, which vehicle had been torn down for repairs, certain parts being destroyed in the fire, though the chassis and other parts, being outside the building when the fire occurred, escaped destruction. The only testimony as to the value of the destroyed parts was that of plaintiff's witnesses who placed the value of those parts as $1,851.63. Mr. Trantham, being the owner, was familiar with the condition of the vehicles. Mr. Easterly had seen the vehicles three days before the fire. Mr. Roth relied in the main on the dealer's listing of book values for used vehicles. He was not personally familiar with the condition of the vehicles immediately prior to the fire. The same observations are true as to the absent witness. The total value placed by Mr. Roth on the four vehicles destroyed was $8,990. To this should be added the value of the destroyed parts, which would raise the total to $10,841.-63. The total value placed by Mr. Trantham on the destroyed vehicles and the destroyed parts was $28,401.63. The to-

tal value placed by Mr. Easterly on the destroyed vehicles and the destroyed parts was $26,646.63.

Plaintiff has sued for $18,151.-63, including $2,151.63 for destroyed parts. But the proof shows that he included in the $2,151.63 a labor item of $300. After eliminating the $300 item, the Court finds the value of the destroyed vehicles and the destroyed parts to be $17,851.63. The apportionment of this finding on the first four items is on the same basis as the insurance coverage of $5,000, $5,000, $5,000, and $1,000. The loss on the parts destroyed, namely, $1,851.63, is within and less than the insurance coverage on the vehicle to which the parts belonged. The plaintiff, therefore, is entitled to recover of the defendant the total sum of $17,851.63 and costs.

A case for imposition of the statutory penalty of 25% has not been made out by the proof. The penalty, accordingly, will not be allowed. Nor is the plaintiff entitled to interest on the recovery. This is for the reason that the amount plaintiff is entitled to recover was not a liquidated amount within the meaning of the interest statute.

Let judgment be prepared for entry in accordance with the foregoing.

### On Motion to Amend Answer

Defendant, Canal Insurance Company, following an adverse decision on the merits, has moved for leave to amend its answer, having in mind two objects. One avowed object is to conform the answer to the proof; the other, to assert a counterclaim wherein, upon an allegation of fraud, defendant would seek recovery from plaintiff the amount of the judgment which has heretofore been rendered in favor of plaintiff and against defendant.

The case was pretried August 15, 1953. At this pretrial conference the issues were freely discussed and afterwards incorporated in the customary pretrial order. This order stated the theory on which plaintiff expected to recover, namely, that a fire occurred and destroyed property covered by the fire insurance policy issued by defendant, that conditions prerequisite to the payment of the loss had been met by plaintiff, and that defendant had refused payment.

Defendant's theory, relied upon to defeat recovery, was that the policy was void because representations contained in the application for insurance allegedly were material and false.

Issues upon which decision turned in the case, listed among those contained in the pretrial order, were the following:

1. Did plaintiff make misrepresentations in his application that were material to the risk and, if so, did such misrepresentations invalidate the policy?

2. Did agent Rader fill in the answers to the questions in the application at the time, or near the time it was signed, or did plaintiff sign the application in blank, and did agent Rader thereafter fill in the answers to the questions, and if either of the above is established, is the defendant estopped as a matter of law to rely on the alleged misrepresentations in the application as a defense to the suit?

3. Was the information in the application furnished by plaintiff and, if so, was it furnished correctly to agent Rader at the time the application was signed?

In its motion to amend the answer defendant tenders no new issue, except that allegations of misrepresentation are sought to be converted into allegations of fraud. This amendment obviously is sought in order to sustain the counterclaim in which defendant would seek to recover back the amount of the judgment awarded plaintiff.

A well recognized objective of complaint and answer, or of pleadings generally, is the shaping of issues to be tried. Rule 16 of the Federal Rules of Civil Procedure, 28 U.S.C.A., is in aid of this objective but goes farther in achieving the objective. It is intended in the Rule that, by way of pretrial, extraneous issues will be weeded out and

those left that are material; also, that pleadings will be amended where necessary to clarify issues, or to state issues that are to be tried but had not theretofore been brought up. As a result of pleadings and pretrial, the parties have two opportunities to present the issues regarded as material, and if found to be material, that are to be tried on the merits.

■ Defendant now seeks a third opportunity, this one under Rules 15(b) and 13(f). The amendment sought is not one to conform the pleadings to the evidence, as contemplated in Rule 15(b). Evidence here does not establish fraud. The Court's finding of fact is quite to the contrary and the counterclaim sought under Rule 13(f) is nothing more than a device calculated to force a new trial of the case, the next one under a new theory of defense which, if successful, would in effect defeat recovery heretofore won by the plaintiff. This Court has previously stated the limitations which the rules relative to an amendment encounter when sought to be used as a device of this kind.

■ "The effect of the amendment they propose would be not to conform the pleadings to a judgment they have won, but to jeopardize and perhaps to overthrow a judgment they have lost. It is a prime purpose of paragraph (b) to avoid the necessity of new trials because of procedural irregularities, not to set judgments aside and make new trials necessary. If this latter application of the rule were permitted, a losing party, by motions to amend and rehear, could keep a case in court indefinitely, trying one theory of recovery or defense after another, in the hope of finally hitting upon a successful one. Courts draw a dividing line between this use of amendment and those uses aimed at conformity." Hart v. Knox County, D.C.Tenn., 79 F.Supp. 654, 658.

The decision in that case is controlling here. The motion to amend, accordingly, should be overruled.

Let an order be prepared.