INS. CO. OF NORTH AMERICA *v.* FERRELL.

5-2585                                              353 S. W. 2d 353

Opinion delivered February 5, 1962.

*Arnold & Arnold,* for appellant.

*Switzer & Switzer,* for appellee.

ED. F. McFADDIN, Associate Justice. This appeal involves a cargo endorsement clause and also an insurance policy issued by the appellant, Insurance Company of North America, to appellee, S. C. Ferrell.

Ferrell was engaged in the business of moving houses, holding a permit from the Arkansas Commerce Commission as a carrier. In April, 1960, Ferrell held a policy issued to him by the appellant, hereinafter called "Insurance Company," and attached to the policy was a cargo endorsement which will be first discussed. Ferrell contracted to move for R. M. Meeker an eight-room house from one location to another in Miller County, Arkansas. The house was transported to the new location when Ferrell claims the house was damaged by a windstorm. The Insurance Company refused Ferrell's claim; he sued, both on the cargo endorsement and the policy; and trial resulted in a verdict and judgment for Ferrell. On this appeal the appellant urges, *inter alia,* the points herein discussed.

I. *Ferrell's Claim Under The Cargo Endorsement.* At the outset, we dispose of the cargo endorsement. The only parties to this action were Ferrell, as plaintiff, and the Insurance Company, as defendant. Meeker was not a party. Ferrell was licensed as a common carrier by the

Arkansas Commerce Commission to engage in the moving of houses. Section 73-1768 Ark. Stats. provides in part:

"No certificate or permit shall be issued to a motor carrier or remain in force, unless such carrier complies with such reasonable rules and regulations as the Commission shall prescribe governing the filing and approval of . . . policies of insurance . . . conditioned to pay . . . any final judgment recovered against such motor carrier for . . . loss or damage to the property of others."

In accordance with its powers, the Commission required Ferrell to obtain an Arkansas Cargo Insurance Endorsement,[1] the germane portion of which reads:

[1] The full text of the Cargo Insurance Endorsement (attached to the policy issued by the Insurance Company to Ferrell) reads:

"The policy to which this endorsement is attached is a cargo insurance policy, and is hereby amended to assure compliance by the assured, as a common carrier of property by motor vehicle, with Section 15, Act 367 of the Acts of Arkansas of 1941 with reference to making compensation to shippers or consignees of all property belonging to shippers or consignees coming into the possession of such carrier in connection with its transportation service, and with the pertinent rules and regulations of the Arkansas Public Service Commission.

"In consideration of the premium stated in the policy to which this endorsement is attached, the insuring company hereby agrees to pay, within the limits of the liability hereinunder provided, any shipper or consignee for all loss, or damage to all property belonging to such shipper or consignee, and coming into the possession of the assured in connection with the transportation service, for which loss or damage the insured may be legally liable, regardless of whether the motor vehicle, terminal, warehouse, and other facilities used in connection with the transportation of the property hereby insured, are specifically described in the policy or not. The liability of the company extends to such loss or damage, whether occurring on the route, or in the territory authorized to be served by the insured, or elsewhere within the boundaries of the State of Arkansas.

"Within the limits of liability hereunder provided, it is further understood, or agreed that no condition, provision, stipulation, or limitation contained in the policy, or any other endorsement thereon, or violation thereof, of this endorsement by the insured shall affect in any way the right of any shipper, or consignee, or relieve the company from liability for the payment of any claim for which the insured may be held legally liable to compensate shipper or consignee, irrespective of the responsibility, or lack thereof, or insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which this endorsement is attached are to remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any loss or damage involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy, except for the agreement contained in this endorsement.

". . . the insuring company hereby agrees to pay . . . *any shipper* . . . for all loss or damage to all property belonging to such shipper . . . and coming into the possession of the assured in connection with the transportation service, *for which loss or damage the insured may be legally liable,* . . ." (Emphasis our own.)

It will be instantly observed that this cargo endorsement was an obligation of the Insurance Company to pay "any shipper" for loss or damage for which "the insured may be legally liable." Under this cargo endorsement, the Insurance Company did not agree to compensate Ferrell, but only to compensate the shipper, who, in this instance, was Meeker. Should the cargo endorsement be less broad than the statute requiring it, then the statutory liability would govern, but no such contention is made in this case. Ferrell, as the carrier, had no cause of action against the Insurance Company on this cargo endorsement under the facts here shown. It was stipulated that there was damage to the house in the amount of $2,000.00; but Ferrell testified that he had not paid Meeker any amount. Ferrell did not admit liability to Meeker, and Meeker did not definitely state that

---

"The liability of the company for the limits provided in this endorsement shall be a continuing one, notwithstanding any recovery hereunder.

"The company shall not be liable for any amount in excess of the maximum shown in the policy (in no event to be less than $1,000.00) in respect to any loss/or damage to, or aggregate of loss/or damage of, or to the property herein insured accruing at any one time or place, or to loss/or damage to such property carried in any one motor vehicle, whether or not such loss or damage occurred while such property is on a vehicle, or otherwise. The minimum liability assumed under this endorsement shall be One Thousand ($1,000.00) Dollars.

"This endorsement may not be cancelled without the cancellation of the policy to which it is attached.

"The policy to which this endorsement is attached shall not expire, nor shall cancellation take effect until after thirty (30) days notice in writing by the company, shall have first been given to said Commission, said thirty (30) days notice to commence to run from the date notice is actually received by the Commission."

For cases involving somewhat similar cargo endorsements, see *McIntosh* v. *Whieldon* (S.C.), 30 S.E. 2d 851; *Carolina Trans. Co.* v. *American Alliance Ins. Co.*, 214 N.C. 596, 200 S.E. 411; and *William Atkin Co.* v. *National Liberty Ins. Co.*, 5 N.Y.S. 2d 863.

Attention is also called to U.S.C.A. Tit. 49 §315, for provisions of the Federal Motor Carrier Act similar to the provisions of §73-1768 Ark. Stats.

Ferrell was liable to him. In short, Ferrell's liability to Meeker had never been determined. Meeker might have sued Ferrell and had his liability established and then recovered from the Insurance Company under the cargo endorsement, or Meeker might have been a party to this lawsuit and had his right of recovery judicially ascertained; but, so far as this record shows, it has never been determined that Ferrell was liable to Meeker. Subrogation is not applicable here because Ferrell has paid nothing. Therefore, insofar as the cargo endorsement was concerned, this action was premature on the part of Ferrell. We have found no case—and learned counsel have cited us to none—which holds that, on an endorsement like this one, the carrier has a cause of action against the insurance company, short of his liability to the shipper being definitely determined. This endorsement is not like the one in *Miami Jockey Club* v. *Union Assurance Society*, 82 F. 2d 588, or *Johnson Transfer* v. *American National Ins. Co.*, 168 Tenn. 514, 79 S. W. 2d 587, 99 A. L. R. 277. Nothing herein will prejudice the rights of Meeker to enforce his claim[2] under the cargo endorsement, or otherwise.

II. *Ferrell's Claim Under The Policy.* Having disposed of the cargo insurance endorsement, we come to Ferrell's attempt to recover on the policy insuring him. The Insurance Company insured Ferrell (as assured) as follows:

(1) "COVERAGE. On the Assured's liability as a carrier for loss or damage caused directly by perils insured against hereunder, to lawful goods and merchandise consisting of house moving (hereinafter referred to as property)."

(2) "WHEN AND WHERE COVERED. Covering only while the property is in the custody of the Assured and only while contained in or on the following

---

[2] For general statements regarding parties and rights of action on policies see: Am. Jur. Vol. 29A, page 877, "Insurance" §1806; Appleman on "Insurance Law and Practice" §4832 *et seq.* and §11771 *et seq.*; 41 C.J.S. page 112, "Insurance" §1191; 60 C.J.S. page 418, "Motor Vehicles" §116(c) and §117; and see also annotation in 141 A.L.R. 628.

described motor vehicle or vehicles . : . (or) other vehicle or vehicles . . . described herein, . . ."

(3) "CONDITIONS . . . OTHER VEHICLE CLAUSE. Wherever the term 'vehicle' is used in this policy it is deemed to include 'motor truck,' 'tractor and semi-trailer units' or 'trailer.' "

(4) "THIS POLICY INSURES . . . The liability of the Assured as a carrier for loss or damage directly caused by: . . . Cyclone, tornado and flood (meaning rising rivers and streams)."

A. *The Vehicle Issue.* It will be observed that this policy covered Ferrell's liability as a carrier for loss or damage directly caused by windstorm or tornado while the transported property was on a vehicle as defined in the policy. One of the defenses raised by the Insurance Company was that the house was not on a "vehicle" at the time of the alleged windstorm and, therefore, Ferrell was not covered under the policy. The Trial Court denied the Insurance Company's motion for an instructed verdict on this theory, and the point is urged here. The evidence established that to move the house Ferrell placed two "I-beams" under it, elevated the house from its foundation by hydraulic jacks, placed dollies[3] under the I-beams, attached the I-beams to a truck, and thus towed the house to the new location. It was further shown that when the house arrived near the new location it was six inches from the place desired, and it was decided to remove the dollies from under the I-beams and then roll the house and I-beams the desired six inches. The dollies had been removed but the house was still on the I-beams when the alleged windstorm damage occurred. Under these facts, the Insurance Company insists that the house was not on a *"vehicle"* when it was merely resting on the I-beams; that the policy coverage applies only while the cargo (*i. e.,* the house) was on a "vehicle"; and that "vehicle" is defined in the

---

[3] Webster's Third New International Dictionary gives this definition of "dolly": "A platform on a roller, or on wheels or casters, used for transporting heavy objects (such as logs, girders or machines) short distances."

policy as "motor truck, tractor, and semi-trailer units or trailer."[4]

Was there sufficient evidence from which a jury could have found that the Meeker house was on a trailer or semi-trailer at the time of the alleged windstorm? It was shown that the Insurance Company insured Ferrell as a house mover, and that the use of I-beams and dollies, as in this case, was the usual and ordinary way to move a house. An automobile is still an automobile, even when the wheels are removed; and a trailer is still a trailer when the wheels (dollies here) are removed. So if the I-beams and the dollies together constituted a trailer in moving a house, then it might reasonably be concluded by a jury that the I-beams under the house remained as a trailer, even with the dollies removed. When it issued the policy insuring Ferrell as a house mover, the Insurance Company must have known how houses were moved. If the policy was ambiguous, then it must be construed most strongly against the Company. (*Morley* v. *McGuire*, 219 Ark. 206, 242 S. W. 2d 112; and *Washington Co.* v. *Ryburn*, 228 Ark. 930, 311 S. W. 2d 302). In construing similar policies, the courts have taken a liberal view as to the coverage. See *Johnson Transfer* v. *American National Ins. Co.*, 168 Tenn. 514, 79 S. W. 2d 587, 99 A. L. R. 277; and *Utica Carting Co.* v. *World Fire Ins. Co.*, 277 App. Div. 483, 100 N. Y. S. 2d 941, 36 A. L. R. 2d 500; and see annotation in 36 A. L. R. 2d 506, entitled "Coverage of policy insuring motor carrier against liability for loss of or damage to shipped property." We conclude that under all of the evidence there was sufficient ambiguity to submit the "vehicle" issue to the jury; and the Court was therefore correct in refusing the defendant's motion for an instructed verdict on this issue.

B. *The Act Of God Issue.* The Insurance Company also moved for an instructed verdict on the claim that if the house was damaged by windstorm it was an

---

[4] In 42 Words & Phrases 317, *et seq.*, there are cited many cases discussing "trailer"; and in 38 Words & Phrases 587, there are cases discussing "semi-trailer."

Act of God and that Ferrell, as a carrier, would not be liable for an Act of God and he, therefore, could not recover under the policy. We find no merit in this argument. The Insurance Company issued a policy to Ferrell to protect him from liability from windstorm. Even if there was a windstorm that damaged the house, still, if Ferrell's negligence concurred with the Act of God, Ferrell would be liable to the shipper. *Jonesboro and L. C. Rd. Co. v. Dunavant,* 117 Ark. 451, 174 S. W. 1187; and *Mo. & N. A. Rd. Co. v. United Farmers,* 173 Ark. 577, 292 S. W. 990. Here there was evidence of delay in moving, so the question should have gone to the jury as to whether Ferrell was liable to the shipper in this case, even if the house was damaged by a windstorm.

C. *Instructions.* There were errors in the instructions in this case which necessitate a reversal. On motion of the plaintiff, the Court amended and gave its Instruction No. 3, which read:

"If you find from a preponderance of the evidence in this case that the plaintiff entered into a contract with R. M. Meeker to transport a house belonging to Meeker from one place in Miller County, Arkansas, to another, and such house was insured under the provisions of the policy issued by the defendant to the plaintiff and such house was damaged by a peril, that is, a violent windstorm, insured against under the provisions of a policy while said house was in the custody of the plaintiff, Ferrell, your verdict will be for the plaintiff and against the defendant and you will assess plaintiff's damage in the amount of $2,000.00."

This instruction was given over the Insurance Company's general and specific objections, which covered the points now mentioned. There were several vices in this instruction.

First: It sought to combine in one instruction the Insurance Company's liability to Meeker as shipper (on the cargo clause previously mentioned) and also the Insurance Company's liability to Ferrell under the policy issued to him.

Second: The policy which the Insurance Company issued to Ferrell was a liability policy rather than a policy insuring property. The damage to the house standing alone gave Ferrell no automatic right of recovery from the Insurance Company. The policy insured Ferrell against liability[5] as a carrier and his liability had never been determined. In the case of *Fidelity & Casualty Co.* v. *Fordyce,* 64 Ark. 174, 41 S. W. 420, Judge Battle said of the assured (railway company in that case as Ferrell in the case at bar):

"In short, our conclusion in this case is that, when the amount of the liability of the railway company for damages in consequence of bodily injuries caused by the operation of its railway was determined, the Fidelity & Casualty Company became bound by its policy to pay so much thereof as does not exceed the sum it agreed to pay in such cases, . . . but that the same was not determined so long as the action therefor was pending in . . . court."

Cases from other jurisdictions are to the same effect. See Annotation in 37 A. L. R. page 644: "Insurance against injuring property or person of third person as liability or indemnity insurance."

The plaintiff's Instruction No. 3 is erroneous, and the same vice occurred in plaintiff's Instruction No. 7. In view of what we have said, it is obvious that Ferrell's liability to Meeker must be established, but we presume that, on remand, evidence will be introduced to such effect. Other assignments need not be discussed in detail since similar situations may not occur on retrial. In view of the manner in which they were offered, we find no error in the Court's ruling in excluding the defendant's Exhibits Nos. 14 and 15. Neither do we find any

---

[5] This was a liability policy as distinguished from an indemnity policy. In *American Employers' Co.* v. *Fordyce,* 62 Ark. 562, 36 S.W. 1051, the distinction between indemnity insurance and liability insurance is clearly stated. See also Appleman on "Insurance Law and Practice" §4261.

error in the Court's refusal to give defendant's Instruction No. 2, or in modifying defendant's Instruction No. 1.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

JOHNSON, J., not participating.